Melvin WELCH, Petitioner,

v.

BENEFITS REVIEW BOARD; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent.

No. 85–3879.

United States Court of Appeals, Sixth Circuit.

Nov. 4, 1986.

Roscoe C. Bryant, J. Michael O'Neill, U.S. Dept. of Labor, Washington, D.C., for appellee.

John P. Mahaffey, Hirsch and Associates, Columbus, Ohio, for appellant.

Before KEITH and WELLFORD, Circuit Judges, and TODD *, District Judge.

PER CURIAM:

Petitioner Melvin Welch filed a claim for benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. § 901 *et. seq.* ("Act"). The claim was denied by the Department of Labor in October 1979. In accordance with the Act, the case was referred to the Office of Administrative Law Judges ("ALJ"). After a formal hearing in August 1982, at which the parties presented evidence and argument, petitioner's claim was again denied. Petitioner appealed the denial to the Benefits Review Board, which affirmed the decision of the ALJ in August 1985. Petitioner filed a timely Petition for Review in this Court. After carefully reviewing the record, we affirm the decision of the Benefits Review Board for the reasons set forth below.

## I.

Petitioner worked as a miner, as defined by 30 U.S.C. 902(d) of the Act and 20 C.F.R. 725.202(a) (1986), for approximately ten years between 1936 and 1951. From 1936 to 1939, petitioner worked as a coal loader. Working at odd jobs until 1942, petitioner hauled coal from the West Columbia Mine to the West Virginia Ordnance Plant from 1942 until 1945. Petitioner testified that his job was to drive a truck to the mine, position it beneath a coal tipple (chute) and open the chute to release fine coal into the bed of the truck. From 1946 to 1951, petitioner worked as a coal loader at the Buckeye Mining Company loading railroad cars with fine coal. From 1951, until his retirement in 1980, petitioner worked for Buckeye Automation as an operator of machines used to manufacture auto parts.

* Honorable James D. Todd, United States District Court for the Western District of Tennessee, sitting by designation.

The medical evidence in this case consisted of two Board-certified physicians' reports based on complete physical examinations conducted October 2, 1979 and June 26, 1980. The first report outlined a full employment and medical history and interpreted a chest x-ray. The report also provided the results of a ventilatory function study and an arterial blood gas test. In assessing the petitioner's physical limitations, the reporting physician observed that the petitioner could walk at a slow pace, take stairs slowly, lift 20 to 25 pounds and carry 25 pounds up to 50 feet. The physician diagnosed petitioner as having chronic bronchitis and chronic obstructive pulmonary disease unrelated to dust exposure in coal mine employment. The second report also obtained medical and employment histories, interpreted a chest x-ray, and reviewed the results of the ventilatory function and blood gas tests taken at the first examination. The second physician's diagnosis was again chronic obstructive pulmonary disease unrelated to dust exposure in coal mine employment. Both reporting physicians noted a twenty-year 1½ pack per day smoking history.

## II.

■■■ This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1116 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). What this means, in effect, is that the standards of review for the Benefits Review Board and this Court are the same. *See Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485 (6th Cir.1985).

Under the statutory scheme of the Black Lung Benefits Act, a miner may establish an interim, rebuttable presumption of pneu-moconiosis (black lung) if the miner produces any one of the following four medical requirements:

1. A positive chest x-ray which establishes pneumoconiosis;
2. Ventilatory or breathing function studies where the test results fall below certain regulatory standards;
3. Blood gas studies, showing an impairment of oxygen transfer from the lungs to the bloodstream within certain regulatory standards;
4. Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment.

20 C.F.R. § 727.203(a).

Once the presumption is established, a miner is presumed to be totally disabled by pneumoconiosis due to coal dust exposure. *Id.* The burden then shifts to the opposing party to rebut the presumption by any one of four methods. 20 C.F.R. 727.203(b). The method of rebuttal relevant to this case states:

(b) The presumption in paragraph (a) of this section shall be rebutted if:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment;

20 C.F.R. 727.203(b)(3).

This Court has interpreted 20 C.F.R. 727.203(b)(3) to mean that if an opposing party is able to prove that pneumoconiosis was not a contributing cause to a miner's disability, then the interim presumption of 203(a) is rebutted. *Gibas*, 748 F.2d at 1120; *Ramey*, 755 F.2d at 494; *Mosely v. Peabody Coal Co.*, 769 F.2d 357, 361 (6th Cir. 1985).

## III.

In the present case, petitioner established a rebuttable presumption of black lung disease by submitting qualifying results from the ventilatory function studies and blood gas oxygen transfer tests. The ALJ found, however, that the presumption was rebutted by two negative x-rays and the two physicians' uncontradicted opinions

asserting no relation of petitioner's condition to coal dust exposure.

Petitioner maintains that the medical opinions of the two physicians lack "standing" to rebut the interim presumption of pneumoconiosis. Since the ventilatory function and blood gas tests on which those opinions were partially based established the presumption in the first place, petitioner argues the presumption cannot be defeated by the same evidentiary grounds establishing it. Petitioner also argues that because the medical opinions do not affirmatively present any alternative cause of his condition, the medical opinions are not "well-reasoned" as required by 20 C.F.R. § 727.203(a)(4), nor do they support the conclusion that coal dust exposure was not a contributory cause to his condition. Finally, petitioner argues that negative x-rays cannot be used as a basis for rebutting the presumption of pneumoconiosis, citing 30 U.S.C. § 923(b).

After reviewing the evidence before the ALJ, we disagree. Although we are concerned about the practice of rebutting the presumption of pneumoconiosis by the same evidence used to establish it, we find that there is substantial evidence even apart from the ventilatory function and blood gas tests to support the ALJ's decision. *See Mosely,* 769 F.2d at 359. In *Mosely,* this Court found substantial evidence to support the ALJ's finding of non-eligibility even though other evidence established the interim presumption. *Id.; accord, Orange v. Island Creek Coal Company,* 786 F.2d 724 (6th Cir.1986).

■ The record indicates that petitioner smoked 1½ packs of cigarettes per day. The record also shows that petitioner had not worked in the coal mine industry for thirty years before his claim for benefits. Moreover, the ALJ was entitled to rely on the physicians' uncontradicted opinions even though they did not present an alternative reason for petitioner's condition. The Act and the relevant regulations only require that coal dust exposure be eliminated as a contributory cause. *See Gibas,* 748 F.2d at 1120; *Mosely,* 769 F.2d at 361. The law does not require that an alternative

etiology be proposed. Since the physicians found no relation between petitioner's condition and exposure to coal dust, the ALJ was thus in accordance with law when he used their opinions as a basis for his decision denying benefits.

■ The negative x-rays also properly rebutted the pneumoconiosis presumption. Negative x-ray evidence is highly probative when, as here, there is other evidence to corroborate it. *Peabody Coal Co. v. Lowis,* 708 F.2d 266, 274 (7th Cir.1983); *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 223 (7th Cir.1982); *see Ansel v. Weinberger,* 529 F.2d 304 (6th Cir.1976).

■ Therefore, we hold that the Benefits Review Board correctly affirmed the decision of the ALJ denying black lung benefits to the petitioner, based as it was on the valid, substantial evidence outlined above. The order of the Board is AFFIRMED.