816 F.2d 679
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Everett COX, Petitioner,
v.
BENEFITS REVIEW BOARD; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondent.
 No. 86-3425.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1987.
 
 Before LIVELY, Chief Judge, BOGGS, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Everett Cox filed a claim for benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. Sec. 901 et seq. ("Act") in 1979. After a formal hearing before an Administrative Law Judge, at which the parties presented evidence and argument, Cox's claim was denied in an opinion dated October 6, 1982. Cox appealed the ALJ's decision to the Benefits Review Board, which affirmed the ALJ's decision on March 14, 1986. Cox filed a timely Petition for Review in this court. After carefully reviewing the record, we find that the ALJ's decision is supported by substantial evidence and affirm the decision of the Board.
 
 I.
 
 2
 Cox was born in 1921 and began work as a coal miner in 1936. Except for the time he served in the army in World War II, he continued working in the mines until 1951. The ALJ credited him with twelve years and three months of coal mine employment. Cox has not worked in such employment since 1951. He was employed by the Tennessee Valley Authority in power production until 1973, when he was retired due to his physical condition.
 
 
 3
 Medical evidence presented in this case includes the results of two complete physical examinations conducted in May and September 1979. Cox was examined by Dr. Swann on May 1, 1979. Chest X-rays were negative for pneumoconiosis (0/0). Arterial blood gas analysis results were normal. Pulmonary function testing showed a moderately severe obstruction ventilatory impairment and a restriction of vital capacity. FEV1/4%1 was 1.7 liters per second and MVV was 41.5 liters. Dr. Swann diagnosed chronic obstructive pulmonary disease and stated that there was no positive evidence of occupational dust disease of the lungs at that time. Dr. Swann clarified that statement in a letter dated September 17, 1980, stating that the report should more correctly read that there was no x-ray evidence of occupational dust disease of the lungs at that time.
 
 
 4
 Cox was examined on September 18, 1979 by Dr. Guthrie. Blood gas studies were normal. Chest x-rays were negative, classified as 0/1 profusion. Dr. Guthrie noted several small peripheral nodules on the x-ray which could possibly be silicotic, but stated that there was no way to know without a biopsy. The x-ray was re-read in December and classified as 0/0. Pulmonary function studies again showed obstruction. FEV1/4%1 results of 1.88 liters per second and MVV results of 51 liters were recorded. Dr. Guthrie diagnosed pulmonary emphysema, and checked the "No" box on the report, indicating that in his opinion the diagnosed condition was not related to dust exposure in Cox's coal mine employment.
 
 II.
 
 5
 20 C.F.R. Sec. 727.202 defines pneumoconiosis as:
 
 
 6
 ... [A] chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosi, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of the definition, a disease "arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 7
 The regulations allow a miner with over ten years coal mine employment to establish an interim, rebuttable presumption of pneumoconiosis if the miner produces any of the following medical evidence:
 
 
 8
 1. A positive chest x-ray which establishes pneumoconiosis;
 
 
 9
 2. Ventilatory or breathing function studies where the test results fall below certain regulatory standards;
 
 
 10
 3. Blood gas studies, showing an impairment of oxygen transfer from the lungs to the bloodstream within certain regulatory standards;
 
 
 11
 4. Other medical evidence, including the documented opinion of a physical exercising reasoned medical judgment.
 
 
 12
 20 C.F.R. Sec. 727.203(a). The ALJ found that Cox had established the presumption of pneumoconiosis as he had over ten years of coal mine employment, and his pulmonary function results fell below the regulatory standards of Sec. 727.203(a).
 
 
 13
 1. The evidence establishes that the miner is doing his usual coal mine work, or comparable and gainful work.
 
 
 14
 2. The evidence establishes that the miner is able to do his usual coal mine work, or comparable and gainful work.
 
 
 15
 3. The evidence establishes that the total disability or death of the miner did not arise out of coal mine employment.
 
 
 16
 4. The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 17
 The ALJ considered all the medical evidence of record, including the blood gas studies, the negative x-rays, the medications prescribed, and the fact that Cox was a smoker. The ALJ agreed with Dr. Guthrie's opinion that Cox's emphysema was not related to dust exposure in his coal mine employment, and found that the other evidence corroborated this opinion. The ALJ thus determined that Cox did not have pneumoconiosis because his disease did not arise out of coal mine employment as required by the definition of pneumoconiosis in Sec. 727.202 and concluded that the interim presumption of disability had been rebutted.
 
 III.
 
 18
 Our scope of review over decisions of the Benefits Review Board is limited. This court looks only for errors of law and for adherence to the statutory standard governing the Board's review of the ALJ's factual determinations. The ALJ's factual findings can be upset only if they are not supported by substantial evidence. Welch v. Department of Labor, 808 F.2d 443, 445 (6th Cir. 1986).
 
 
 19
 Cox argues that the ALJ made several legal errors and that his finding that the presumption of pneumoconiosis had been rebutted is not supported by substantial evidence. Cox argues that Dr. Guthrie's opinion that Cox's disease was not related to his coal mine employment was not a "reasoned medical judgment" as required by 20 C.F.R. Sec. 727.203(a)(4) because he did not provide an alternative explanation for his symptoms. The ALJ did not err in relying on Dr. Guthrie's opinion. An alternative etiology is not required for a physician's opinion to be "reasoned medical judgment" within the meaning of Sec. 727.203(a)(4). This court has held that an ALJ is entitled to rely on a physician's uncontradicted opinion even though it does not present an alternative reason for the patient's condition. Welch, supra at 446.
 
 
 20
 Cox also argues that the ALJ erred by not allowing certain other medical reports into evidence. These reports were not signed or initialed by any medical personnel. The ALJ found that they were not authenticated and refused to admit them. Cox argues tht the formal rules of evidence do not apply to hearing before the ALJ and that the ALJ should consider all relevant medical evidence. The Board refused to consider the propriety of the ALJ's rejection of the evidence, pointing out that the reports, even if admitted, could not constitute substantial evidence weighing against the rebuttal evidence on record because neither report mentioned pneumoconiosis nor explained the etiology of the respiratory conditions diagnosed. We find that the Board acted correctly in refusing to consider whether the evidence should have been admitted. Any error by the ALJ was clearly harmless as the proffered evidence would not have strengthened Cox's claim.
 
 
 21
 Finally, Cox argues that the ALJ erred by considering the negative x-rays as rebuttal evidence. 30 U.S.C. Sec. 923(b) provides in pertinent part that "no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram." However, Cox's claim was not denied solely on the basis of the negative x-ray. The ALJ considered the x-ray only to corroborate Dr. Guthrie's opinion. This court has held that negative x-rays can properly be used to rebut the presumption of pneumoconiosis when there is other evidence to corroborate them. Welch, 808 F.2d at 446.
 
 
 22
 We find that there was substantial evidence to support the ALJ's determination that the presumption of pneumoconiosis had been rebutted and that the Benefits Review Board thus correctly upheld the ALJ's denial of benefits. The Board's order is AFFIRMED.