**Henry WARMAN, Petitioner,**

v.

**PITTSBURG & MIDWAY COAL MINING CO.; Travelers Insurance Co.; Director, Office of Workers' Compensation Programs, United States Department of Labor and Benefits Review Board, Respondents.**

No. 85–4074.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1986.

Decided Feb. 9, 1988.

Ronald Bruce (argued), Monhollon, Bruce & Kelley, Greenville, Ky., for petitioner.

Charles E. Lowther, Thomas L. Ferreri (argued), James G. Fogle, Madisonville, Ky., Benefits Review Bd., U.S. Dept. of Labor, Thomas Holzman, Jeffrey J. Bernstein, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., The Travelers Ins. Co., Hartford, Conn., for respondents.

Before ENGEL and KRUPANSKY, Circuit Judges and EDWARDS, Senior Circuit Judge.

ENGEL, Circuit Judge.

In this review of the denial of black lung benefits we are presented with the subtle yet important difference between the separate rebuttal provisions of 20 C.F.R. § 727.203(a)(3) and (4). While we hold that the Board erred in supporting the ALJ's reliance upon (b)(3) for rebuttal of the interim presumption under section 727.203(a), we nonetheless, for the reasons which follow, uphold denial upon the alternative ruling of the ALJ under (b)(4). Although the Board did not expressly affirm on this basis, the issue was properly before it and is likewise properly before us. Since our standard of review and that of the Board are the same, we do not remand but instead uphold the final decision upon the alternate holding of the ALJ.

Henry Warman, petitioner, seeks review of a decision of the Benefits Review Board affirming a determination by an administrative law judge denying his claim for

benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*

This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1116 (6th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). What this means, in effect, is that the standards of review for the Benefits Review Board and this Court are the same.

*Welch v. Benefits Review Board,* 808 F.2d 443, 445 (6th Cir.1986) (citation omitted). Both this court and the Board examine the ALJ's decision to determine whether it is consistent with applicable law and supported by substantial evidence.

Petitioner was born in 1923 and worked in the coal mines for thirty-eight years, from 1940 until his retirement in 1978. He worked in the underground mines for twelve years and in strip mines for twenty-six years. His last employer was respondent Pittsburg & Midway Coal Co.

On July 6, 1978 petitioner filed a claim under the Black Lung Benefits Act. A hearing was held before an ALJ, who on July 11, 1980 issued a decision denying benefits. The ALJ found that Warman was not entitled to the presumption of total disability under 20 C.F.R. § 727.203(a). In making this finding the ALJ rejected a finding of pneumoconiosis by Dr. Neal Calhoun. The ALJ stated that Dr. Calhoun misinterpreted ventilatory tests and that his assessment of the reduction in War-

man's breathing capacity was "an obvious overstatement." The ALJ also rejected other evidence that Warman had offered in attempting to invoke the interim presumption.

Warman appealed the ALJ's decision to the Benefits Review Board. The Board held that Dr. Calhoun's assessment of Warman's breathing capacity was reasoned and documented and that the ALJ had improperly substituted his own judgment for Dr. Calhoun's. Because Dr. Calhoun's diagnosis "establishe[d] the presence of a totally disabling respiratory or pulmonary impairment" under 20 C.F.R. § 727.203(a)(4), the Board reversed the ALJ's decision and remanded the case to the ALJ for consideration of whether the respondents had rebutted the interim presumption.

On remand the ALJ found the presumption rebutted under 20 C.F.R. § 727.203(b)(3) and (b)(4). In the course of his opinion the ALJ responded sharply to the Benefits Review Board's criticism of his original decision. Warman again appealed the ALJ's decision to the Benefits Review Board.

The Benefits Review Board held that the ALJ's finding of rebuttal under 20 C.F.R. § 727.203(b)(3) was rational, supported by substantial evidence and consistent with applicable law. The Board, finding rebuttal under subsection (b)(3), did not base its affirmance of the ALJ's decision upon the latter's finding of rebuttal under subsection (b)(4). Warman petitioned for review of the Board's decision by this court.

The first issue before us is whether the Board's finding that the interim presumption under 20 C.F.R. § 727.203(a) had been rebutted under 20 C.F.R. § 727.203(b)(3) is erroneous as a matter of law.[1] Section 727.203(b) provides four methods for rebutting the interim presumption:

---

1. Petitioner argues that the presumption should have been invoked pursuant to 20 C.F.R. § 727.203(a)(1) and (a)(2). Since respondent has not disputed the Board's earlier finding that the presumption was triggered under § 727.203(a)(4), we need not address whether the presumption was triggered under subsections (a)(1) or (a)(2). Further, because our in-

quiry is limited to whether the Board's finding of rebuttal was erroneous as a matter of law, our holding is not affected by *Kyle v. Director, Office of Worker's Compensation Programs,* 819 F.2d 139 (6th Cir.1987), which is expressly limited to invoking presumptions under Part B criteria. *See also Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485 (6th Cir.1985).

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

*Id.* The Benefits Review Board based its decision on subsection (b)(3). "This court has interpreted 20 C.F.R. 727.203(b)(3) to mean that if an opposing party is able to prove that pneumoconiosis was not a contributing cause to a miner's disability, then the interim presumption is rebutted." *Welsh v. Benefits Review Board,* 808 F.2d 443, 445 (6th Cir.1986).

The ALJ made the following statement regarding the medical evidence:

I agree with Dr. Gallo. I find that claimant does not suffer from pneumoconiosis and that any pulmonary difficulties which he suffers are not job related. Since I accept Dr. Anderson's pulmonary evaluation, I also accept his opinion that claimant suffers no pulmonary disability. It is apparent that I cannot accept the opinions of all of the physicians, I elect to accept that of those who have the most experience or expertise. I find that the employer has rebutted the interim presumption under § 207.203(b)(4) and (3). [apparently intending §§ 727.-203(b)(4) and (3)].

The Board in holding that the ALJ's decision was supported by substantial evidence, noted that, "rebuttal in this case is predicated on a lack of *causation,* not the ab-

sence of total disability." However, the Board also stated that, "Dr. Anderson's finding of no functional disability arising out of coal mine employment may support rebuttal pursuant to subsection (b)(3) under the Sixth Circuit's standard." (citing *Gibas, supra,* as authority). This construction of our decision in *Gibas* is incorrect.

Dr. Anderson's final diagnosis of Henry Warman's condition was: (1) category II pneumoconiosis; (2) mixed psychoneurosis; and (3) symptoms indicative of early arteriosclerotic heart disease. Later excerpts from Dr. Anderson's deposition clearly demonstrate that Dr. Anderson, although diagnosing Warman as having pneumoconiosis, believed that Warman was not totally disabled by the disease.

Q.26. Dr. Anderson, you diagnosed a category II pneumoconiosis, are the impressions of a category II pneumoconiosis, is this a simple pneumoconiosis under the UICC System?

A. Yes sir.

Q.27. And in your opinion is there any functional impairment whatsoever due to the impression of pneumoconiosis?

A. No sir.

Q.28. Now, Dr. Anderson, why is there nodulation that appears on the X-ray, is that related to a scar tissue that has formed?

A. Well this is due to a combination of dust deposits with the scar tissue that is elicited by the dust deposits.

Q.29. Doctor, if there is scar tissue formed on the lungs, why doesn't that produce a ventilatory deficit?

A. Because there is not sufficient scar tissue.

\* \* \* \* \* \*

Q.31. What is your opinion as to the extent of pulmonary disability related to simple pneumoconiosis per se?

A. You mean in general or in Henry Warman's case?

Q.32. In Henry Warman's case.

A. I don't find any evidence of any impairment or functional disability in Mr. Warman due to pneumoconiosis.

Q.33. All right. Is there any disability, cardiac or pulmonary wise, that you found from the breathing of coal dust?

A. No sir, not functional.

Attempting to use this line of reasoning for rebuttal under section 727(b)(3) was expressly rejected by this court in *Gibas*.

> [S]ection 727.203(b)(3) has nothing to do with the degree of a miner's disability. On the contrary, it concerns the burden placed upon an employer in order to rebut the interim presumption of section 727.203(a). Specifically, section 727.-203(b)(3) provides an employer the opportunity to rebut the presumption that a miner is "totally disabled" by "establish[ing] that the *total disability* did not arise in whole or in part out of coal mine employment."

748 F.2d at 1120 (citation omitted). Dr. Anderson's testimony does not provide substantial evidence supporting a finding that Warman's disability did not arise in whole or in part out of coal mine employment.

Dr. Thomas A. Gallo's report and deposition were made a part of the record. The ALJ expressly accepted Dr. Gallo's opinions stating, "I agree with Dr. Gallo. I find that claimant does not suffer from pneumoconiosis and that any pulmonary difficulties which he suffers are not job related." Dr. Gallo's opinion was that Warman did not have pneumoconiosis. Instead, his impression was that Warman had chronic obstructive pulmonary disease, bronchitis and emphysema.[2] Cited by Dr. Gallo as the major probable causes of the obstructive pulmonary disease were Warman's genetic constitutional makeup predisposing him to obstructive pulmonary dis-

ease and the tracheal bronchial irritant of cigarette smoking. Dr. Gallo's report expressly stated that Warman had smoked one pack of cigarettes a day for at least 30 years.

A closer examination of Dr. Gallo's deposition, however, reveals that it also provides an inadequate basis for finding that the total disability did not arise in whole or in part out of coal mine employment as required by 727.203(b)(3). Dr. Gallo stated that minor factors in producing obstructive pulmonary disease would include air pollution, noxious fumes and dust of any sort. Further, questions posed to Dr. Gallo were phrased in terms of "primary" causes rather than 727.203(b)(3)'s requirement that the total disability not arise "in whole or in part."

> 28. In your opinion, based upon your pulmonary evaluation, does Mr. Henry Warman have a pulmonary disease primarily caused by his employment in the coal industry?
>
> A. No.
>
> \* \* \* \* \* \*
>
> 56. Doctor, you were asked if Mr. Warman had any pulmonary disease that was primarily caused by his employment in the coal industry and your answer was no. Does he have any pulmonary diesease that in some way was caused by his employment in the coal industry?
>
> A. I think these diseases that I so listed, bronchitis and emphysema, certainly once established can be aggravated by exposure to dust.
>
> 57. In your opinion have they been aggravated in Mr. Warman's situation?

---

**2.** Petitioner argues that Dr. Gallo's diagnosis falls within the definition of pneumoconiosis found in 20 C.F.R. § 727.202 which states that

> For the purposes of the act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" in-

cludes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.

While Dr. Gallo did testify that exposure to coal dust could aggravate bronchitis and emphysema he made no finding as to the level of aggravation, if any, in Warman's case. *See also Moseley v. Peabody Coal Co.,* 769 F.2d 357, 362 (6th Cir.1985); *Peabody Coal Co. v. Lowis,* 708 F.2d 266 (7th Cir.1983); *Underhill v. Peabody Coal Co.,* 687 F.2d 217 (7th Cir.1982); *United States Steel Corp. v. Gray,* 588 F.2d 1022, 1026–27 n. 3 (5th Cir.1979).

A. Well, the thing is, we note his history—12 years underground and 26 years in strip mines. I don't know what the dust concentrations were that he was continually exposed to. So that certainly any dusty conditions certainly can aggravate a man with obstructive pulmonary disease. That can be made a general statement. As to how much aggravation might have occurred, you would have to know what the dust concentrations that he was primarily exposed to most of his employment in the surface mines.

Dr. Gallo's report and deposition do not provide substantial evidence that Warman's disability did not arise in whole or in part out of coal mine employment.

Therefore, we conclude that the ALJ erred in finding that the employer had satisfied the requirements of section 727.-203(b)(3) for rebutting the interim presumption of total disability in section 727.203(a).

Next, we consider whether the ALJ's finding of rebuttal under subsection (b)(4) is supported by substantial evidence in the record viewed as a whole.[3] As previously stated, the Board found it "unnecessary to review the administrative law judge's finding of rebuttal under subsection (b)(4)" because it based its decision on subsection (b)(3). While in many circumstances it may be proper to remand a case to the Board for further evaluation, for the following reasons we address the issue of rebuttal under subsection (b)(4).

As stated previously, the Board may set aside the ALJ's findings of facts and conclusions of law only if they are not supported by substantial evidence or not in accordance with law. *Welch v. Benefits Review Board*, 808 F.2d 443, 445 (6th Cir. 1986). If we remanded this case to the Board it would confront the identical facts now before this court. Because our review also requires us to examine whether the ALJ's decision is supported by substantial evidence and is in accordance with law, we are now in as good a position to judge the ALJ's decision as we would be after a remand to the Board.

Further, this court has jurisdiction over decisions of the Board under 33 U.S.C. § 921(c) which states in part that:

Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

*Id.* The Board's failure to base its decision denying benefits on alternate grounds does not deprive us of the ability to consider rebuttal under subsection (b)(4), especially where the ALJ based his decision on either (b)(3) or (b)(4) and where the parties before us have fully addressed the issue of rebuttal under subsection (b)(4) in their briefs.

In *Orange v. Island Creek Coal Co.,* 786 F.2d 724 (6th Cir.1986), the ALJ had before him five positive X-ray readings and four negative readings. The ALJ gave special weight to the X-ray interpretation by a "B" reader,[4] considered later films to be more persuasive because of the progressive na-

---

3. "Substantial evidence is 'more than a mere scintilla;' substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 488 (6th Cir.1985) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971)).

4. B-readers have greater expertise and training in evaluating X-rays. *See* 20 C.F.R. § 718.202(a)(1)(ii)(E). *See also Hatfield v. Secretary of Health & Human Services,* 743 F.2d 1150, 1154 n. 3 (6th Cir.1984); *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 487 n. 4 (6th Cir.1985).

ture of pneumoconiosis, and considered all the ventilatory studies but gave the greatest weight to the most recent study which found the claimant had normal results. Our court therefore found in *Orange* that the evidence described above provided substantial evidence supporting rebuttal under subsection (b)(4).

■ In this case, the ALJ had before him the opinions of six physicians finding some evidence of pneumoconiosis in Mr. Warman's first four X-rays. However, the ALJ noted that all of the more qualified "B" readers had read Warman's X-rays as negative for pneumoconiosis. The ALJ also noted that all three of Warman's most recent X-rays had been read as negative for pneumoconiosis.[5] Dr. Cole, a certified "B" reader interpreted a film taken January 15, 1979 as showing no evidence of pneumoconiosis. Drs. Quillin and Pendergrass, both "B" readers, interpreted the X-ray taken on May 7, 1979 as negative for pneumoconiosis. And Dr. Gallo, a specialist in internal medicine with a subspeciality in pulmonary disease although apparently not a "B" reader, interpreted a film taken on May 4, 1979 as negative for pneumoconiosis.

The ALJ in this case also faced conflicting medical evidence in the area of ventilatory or breathing function studies. The ALJ considered all the studies and made the credibility determinations which are his province. Ultimately, he accepted Dr. Anderson's results as reflecting Mr. Warman's breathing capacity. Dr. Anderson, a pulmonary specialist, found the results of Warman's pulmonary function tests were normal. The ALJ's acceptance of Anderson's pulmonary studies is consistent with a finding that Warman did not suffer from pneumoconiosis. Anderson did interpret Warman's X-ray of October 10, 1978 as evidencing simple pneumoconiosis, but he found no evidence of impairment or functional disability in Mr. Warman due to pneumoconiosis. It was not inconsistent for the ALJ to accept Anderson's pulmonary function studies and yet reject his conclusion in the X-ray area. A judge need not accept the entire testimony of one witness as true as to all aspects when confronted with conflicting evidence. Here the ALJ relied on the X-ray interpretations of the "B" readers (along with that of Dr. Gallo) and the pulmonary studies of Anderson. The ALJ accepted the opinions of persons with the greatest expertise in each case. Nor is Anderson's opinion that simple pneumoconiosis was not totally disabling inconsistent with intent and spirit of the Act so evidenced by our recent decision in *Adams v. Peabody Coal Co.*, 816 F.2d 1116, 1119 (6th Cir.1987).

This court finds the evidence cited herein constitutes substantial evidence supporting the denial of benefits. Therefore, the ALJ's decision denying benefits is AFFIRMED.

GEORGE CLIFTON EDWARDS, JR., Senior Circuit Judge, dissenting.

Respectfully, I dissent from the opinion of my brethren in this black lung case. It is my opinion that petitioner Warman has established that he had worked in coal mines for 38 years, 20 of them at underground mining, that he suffers from pneumoconiosis, is disabled thereby and that the ALJ's findings to the contrary grossly distort the record of this case. There is no question that, as the Review Board recognized in reversing the ALJ in the first instance, § 727.203(a)(4) provides for invocation of a presumption which petitioner Warman is entitled to have applied.

Once the presumption has been invoked, the employer has the burden to rebut it pursuant to § 727.203(b)(1–4) by establishing that the miner is able to or is doing his usual coal mine work; or that his pneumoconiosis did not arise in whole or in part out of coal mine employment or that he does not suffer from pneumoconiosis. 20 C.F.R. § 727.203(b). The standard for rebuttal was outlined in *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir.1984):

Thus, Section 727.203(b)(3) does not permit the award of benefits for partial disability; it merely grants an employer the chance to prove that a miner's disability

---

5. Warman's arterial blood gas studies had also been insufficient to invoke the interim presumption.

did not arise in whole or in part, from his coal mine employment. If any employer is able to prove that pneumoconiosis played no part in causing a miner's disability, then the employer has satisfied the requirements of Section 727.203(b)(3). Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits.

Of course, I recognize that the ALJ, after being soundly admonished by the Benefits Review Board in its reversal, responded with such vigor that the Board ultimately reversed its original view and upheld his findings.

This Court's question is whether, after a presumption of total disability due to pneumoconiosis has been invoked under § 727.203, there was evidence presented such as to rebut the presumption by a preponderance of evidence.

The presumption of pneumoconiosis was placed in the Act by a Congress sensitive to the hazards of coal mining. The Sixth Circuit, in which a great deal of coal mining is done, has prior to now, sought to give the congressional intent full effect. I regret that the majority opinion would have the effect in this Circuit of eliminating a statutory provision designed as a remedial measure for one of the worst of the hazards of mining of coal.