37 F.3d 1499
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Clarence M. GOINS, Petitioner,
v.
U.S. STEEL MINING COMPANY; and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 92-4219.
 United States Court of Appeals, Sixth Circuit.
 Oct. 13, 1994.
 
 Before: CONTIE, MILBURN, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Clarence M. Goins appeals the Benefits Review Board's order which affirmed the administrative law judge's denial of black lung benefits. We affirm the decision to deny benefits.
 
 I.
 
 2
 Clarence M. Goins ("Goins" or "petitioner") worked for twelve years in the coal mines as an employee of the United States Steel Mining Company ("U.S. Steel") prior to being laid off on August 13, 1982.[1] Goins has not worked since that date.
 
 
 3
 Goins filed his claim for black lung benefits with the United States Department of Labor on November 27, 1985, claiming that he: started having breathing difficulties in 1976; was hospitalized repeatedly from 1976 through 1981; suffers from breathing problems and shortness of breath; coughs and spits-up phlegm; and, reacts poorly to fumes and humid weather. Goins admitted that he smoked approximately one and one-half packs of cigarettes per day for 45 to 50 years until he quit in 1988.
 
 
 4
 After the Department of Labor denied his claim, Goins requested a hearing before an administrative law judge ("ALJ"). On August 7, 1989, the ALJ issued his Decision and Order denying benefits:
 
 
 5
 Under [20 C.F.R.] Sec. 718.202(a)(1), a finding of pneumoconiosis may be made on the basis of x-ray evidence. In this case, the record contains interpretations of x-rays taken on what appears to be 28 occasions. Between February 1968 and September 1981, 17 of those x-rays were taken. Although minimal fibrosis and questionable bronchitis were noted on several films, no mention of pneumoconiosis was made on the interpretations of any of these films.
 
 
 6
 In November 1982, a physician who examined the Claimant in regard to the existence of pneumoconiosis interpreted a chest x-ray film as negative for that disease. Similarly, September 1983 and December 1984 films were found to be negative for pneumoconiosis. The first x-ray to be found positive for pneumoconiosis was the January 1985 film. Two April 1985 films were also found to be positive for pneumoconiosis, however, one of those films was reinterpreted by a B-reader as negative.... Negative interpretations were also made of June, July and November 1985 films. A February 1986 film was interpreted by three B-readers as negative for pneumoconiosis. Finally, the most recent film, dated April 25, 1988, was read as positive by Dr. Baker, who is neither a B-reader nor a board-certified radiologist.
 
 
 7
 Through February 1986, only 3 of the 29 interpretations were positive for pneumoconiosis. One of those films was reread as negative by a B-reader. All B-reader interpretations were negative for pneumoconiosis. [Accordingly,] there is insufficient radiographic evidence to establish the existence of pneumoconiosis.
 
 
 8
 ....
 
 
 9
 In sum, Drs. Penman, Clarke and Baker all found pneumoconiosis. I give less weight to Dr. Clarke's report because it is based, at least partially, on a pulmonary function study where the results were substantially less than more recent studies and on a positive x-ray interpretation whereas I have found the x-ray evidence negative for pneumoconiosis. In addition, Dr. Clarke did not have the benefit of an arterial blood gas study. Likewise, Dr. Penman did not have the benefit of an arterial blood gas study; his pulmonary function study was apparently not as thorough as others, and his findings are based, at least partially on a positive x-ray interpretation whereas I have found the x-ray evidence to be negative for pneumoconiosis.
 
 
 10
 Dr. Baker also relied on a positive x-ray reading, a pulmonary function study where the results were noted as "mild obstructive ventilatory defect," and a non-qualifying arterial blood gas study. Because of these discrepancies, I find that the reports of Drs. Clarke, Penman, and Baker are entitled to less weight.
 
 
 11
 I place greater weight on the reports of Drs. Williams, Anderson, O'Neill and Wright because they are more complete, better reasoned and better supported by the objective medical evidence. I find that pneumoconiosis has not been established pursuant to Sec. 718.202(a)(4).
 
 
 12
 ALJ's Decision and Order at 12-14.
 
 
 13
 The ALJ also rejected Goins' claim that he was totally disabled:[2]
 
 
 14
 Drs. Clarke and Penman both found that Mr. Goins was totally disabled by coal workers' pneumoconiosis. However, Drs. Anderson, O'Neill, Wright and Williams all found that Mr. Goins is not totally disabled by an occupational lung disease. Dr. Baker did not comment on the extent or etiology of any respiratory impairment or disability suffered by Mr. Goins.
 
 
 15
 ....
 
 
 16
 Both Drs. Clarke and Penman relied on pulmonary function study and blood gas study evidence that was nonqualifying under the Part 718 criteria for establishing total disability. Further, the x-rays they relied on were among the only of record to be interpreted as positive for pneumoconiosis. Dr. Penman is a well-qualified specialist in pulmonary medicine, but the qualifications of Drs. O'Neill, Anderson and Wright are also well established in this record. The reports of Drs. O'Neill, Wright and Williams are several months more recent than those of Drs. Penman and Clarke.
 
 
 17
 It is noted that Mr. Goins has a significant cigarette smoking history. Drs. O'Neill and Wright said that cigarette smoking was a far more important cause of the bronchitis. Drs. Penman and Clarke found that smoking was not an etiological factor in regard to Mr. Goins' restrictive disease. Be that as it may, it must be noted that no other physicians interpreted their pulmonary function study evidence as showing significant restrictive disease.
 
 
 18
 ....
 
 
 19
 [T]he burden is on the claimant to establish that his pneumoconiosis is totally disabling. Considering the strengths and limitations of the various medical reports as described above, and Mr. Goins' testimony, his smoking history, and his job, it is concluded that the weight of the evidence fails to establish ... that he is totally disabled by pneumoconiosis....
 
 
 20
 Id. at 16-17 (citation omitted).
 
 
 21
 Goins appealed the ALJ's decision to the Department of Labor's Benefits Review Board ("Board"). On June 27, 1991, the Board affirmed the ALJ's Decision and Order:
 
 
 22
 Because of their status as B-readers, the administrative law judge accorded greater weight to the negative interpretations provided by Drs. Williams, Sargent and Elmer, and concluded that claimant failed to establish the existence of pneumoconiosis by x-ray. It is within an administrative law judge's discretion to accord greater weight to physicians' x-ray readings based on their superior qualifications. The record indicates that Dr. Baker is an A-reader. Inasmuch as a B-reader may be regarded as superior to an A-reader, we hold that the administrative law judge acted within his discretion in according greater weight to the interpretations of Drs. Williams, Sargent and Elmer based on their status as B-readers. Accordingly, we affirm the administrative law judge's finding that claimant failed to establish the existence of pneumoconiosis....
 
 
 23
 The administrative law judge next considered the biopsy evidence ... and properly noted that neither the University of Tennessee bronchoscopy report nor Dr. Caffrey's subsequent review of the biopsy slides, indicated the presence of pneumoconiosis. Accordingly, we affirm the administrative law judge's finding that claimant failed to establish the existence of pneumoconiosis pursuant to 20 C.F.R. Sec. 718.202(a)(2).
 
 
 24
 ....
 
 
 25
 [T]he administrative law judge found the opinions of Drs. Williams, Anderson, O'Neill and Wright more complete, better reasoned and better supported by the objective evidence of record than the reports of Drs. Penman, Baker and Clarke.... It is the administrative law judge's function to weigh the evidence and make credibility determinations. Such determinations must be upheld unless they are unreasonable and unsupported by the record. In the instant case, the administrative law judge acted within his discretion in finding that the reports of Drs. Williams, Anderson, O'Neill and Baker were reasoned and supported by the objective evidence of record....
 
 
 26
 Because claimant failed to establish the existence of pneumoconiosis[,] the administrative law judge properly denied benefits.
 
 
 27
 Benefits Review Board's Decision and Order at 2-3 (citations omitted).
 
 
 28
 On September 30, 1992, the Board denied Goins' motion for reconsideration. On November 25, 1992, Goins timely appealed to this court pursuant to 33 U.S.C. Sec. 921(c).
 
 II.
 
 29
 Our role in reviewing the Board's determination is limited. "[W]e must affirm the Board's decision if the Board has not committed any legal errors or exceeded its statutory scope of review of the administrative law judge's factual determinations." Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990) (citation omitted). Because the standards of review for the Board and this court are the same, Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986), we must determine whether the ALJ's findings of fact and conclusions of law are supported by substantial evidence. Id. Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985) (citations omitted). If the ALJ's findings are supported by substantial evidence, we may not set aside the ALJ's findings "even if we would have taken a different view of the evidence were we the trier of facts." Id. at 486 (citation omitted).
 
 
 30
 Goins claims that he is totally disabled by pneumoconiosis. In his one page pro se brief, Goins claims that the ALJ and the Board failed to consider: "my doctors [sic] examination for black lung [and the] results of same"; the "type of job that I was doing, and my age, [and my] length of service [in the] dusty atmosphere"; the "problems with breathing from 1975 til present date"; and "the fact that black lung, once found, does not leave the lungs." Goins offers little to buttress his claim for benefits.
 
 
 31
 In claims filed after March 31, 1980, a claimant seeking to establish eligibility for black lung benefits must prove "(1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis." Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1039 (6th Cir.1993) (citations omitted). "The claimant bears the burden of proving each of these elements of his claim by a preponderance of the evidence...." Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989) (citations omitted).
 
 
 32
 The record reveals that the ALJ considered the medical evidence submitted by the parties before concluding that the evidence did not establish the existence of pneumoconiosis. Though Goins claims that the ALJ failed to consider the evidence that he presented, "a party challenging an ALJ's decision must do more than recite evidence favorable to his case, [he] must demonstrate with some degree of specificity the manner in which substantial evidence precludes the denial of benefits or why the ALJ's decision is contrary to law." Cox v. Benefits Review Bd., 791 F.2d 445, 446 (6th Cir.1986) (citations omitted). "Generalized contentions of error '[are] equivalent to a request to reweigh the evidence of record, which is beyond the Board's scope of review.' " Eversole v. Shamrock Coal Co., 30 F.3d 133 (6th Cir. July 18, 1994) (unpublished) (brackets in original) (citation omitted).
 
 
 33
 Because the ALJ's decision to deny benefits is supported by substantial evidence, we AFFIRM.
 
 
 
 [1]
 The parties agree that Goins' coal mine employment involved dust exposure
 
 
 [2]
 See ALJ's Decision and Order at 14 ("Assuming arguendo that the Claimant had established the existence of pneumoconiosis, he would also need to establish that he is totally disabled by pneumoconiosis.")