89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ervin RAMEY, Petitioner-Appellant,
v.
KENTUCKY CARBON CORPORATION; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents-Appellees.
 No. 95-3204.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges; ALDRICH*, District Judge.
 PER CURIAM.
 
 
 1
 Petitioner Ervin Ramey appeals the decision of the Benefits Review Board, which affirmed an administrative law judge's denial of his claim for black lung benefits on the ground that petitioner had not shown by a preponderance of evidence that his disability was due in part to pneumoconiosis under 20 C.F.R. § 718.204(b). Petitioner argues that the Benefits Review Board erred in reversing and remanding the original ALJ's finding that petitioner was entitled to benefits, and that the replacement ALJ's determination that petitioner was not entitled to benefits is not in accordance with law and is unsupported by substantial evidence. For the following reasons, we affirm.
 
 
 2
 * Petitioner filed an application for federal black lung benefits on January 15, 1987. The Department of Labor rejected petitioner's claim and affirmed that denial upon reconsideration of additional evidence. The claim was forwarded to an ALJ, Robert L. Cox, who conducted a hearing and issued a decision and order awarding benefits.
 
 
 3
 The employer appealed. The Benefits Review Board affirmed as unchallenged the ALJ's findings that petitioner had at least thirty-four years of coal mine employment; that x-ray evidence established the existence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a)(1); that, as petitioner had worked for more than ten years in a coal mine, there was a rebuttable presumption under 20 C.F.R. § 718.203(b) that petitioner's pneumoconiosis arose out of his employment as a miner; that pulmonary function tests established petitioner's total disability under 20 C.F.R. § 718.204(c)(1); and that petitioner's total disability was further established by blood gas tests under 20 C.F.R. § 718.204(c)(2).
 
 
 4
 The Board then rejected employer's argument that the ALJ had erred by failing to discredit Dr. J.P. Sutherland's testimony as unreasoned. The Board noted that the ALJ had discretion to determine whether Dr. Sutherland's conclusions were adequately supported, and that the ALJ did not have to discredit Dr. Sutherland's report simply because he was not familiar with the details of petitioner's smoking history. Finally, the Board rejected the employer's assertion that the ALJ was required to disregard Dr. Sutherland's opinion because he was not as qualified as other physicians of record; ALJ's may take physicians' qualifications into account when weighing evidence, but they are not required to do so.
 
 
 5
 The Board did, however, agree with the employer's contention that the ALJ had erred in discrediting the opinions of Drs. Cooper and Broudy, both of whom found that petitioner's respiratory impairment was caused by cigarette smoking, not his coal mine employment. The ALJ had rejected these doctors' findings on the grounds that neither physician had adequately explained his rejection of petitioner's thirty-four year coal mining history as a possible cause of petitioner's impairment. In fact, the Board noted, these doctors were aware of petitioner's thirty-four year employment history with coal mines but rejected that explanation because of the particular nature of petitioner's respiratory impairment:
 
 
 6
 Inasmuch as both physicians explained that claimant had an obstructive type of impairment which they associated with cigarette smoking rather than pneumoconiosis, the administrative law judge's rejection of their opinions amounted to an improper substitution of the administrative law judge's own medical opinion for those of the physicians.
 
 
 7
 The Board also concurred with the employer that the ALJ had violated the Administrative Procedure Act "by failing to explain why he credited Dr. Williams' medical report diagnosing a restrictive defect over the reports of those physicians who diagnosed an obstructive defect." Similarly, the Board noted that the ALJ "also failed to fully explain his rejection of medical reports by Drs. Anderson, Mettu, Dahhan and Kress, all of whom diagnosed an obstructive impairment caused by smoking."
 
 
 8
 For these reasons, the Board vacated the ALJ's findings with respect to causation under 20 C.F.R. § 718.204(b). Noting that it was affirming in part and vacating in part, the Board remanded the case to the ALJ "for reconsideration of the medical opinion evidence pursuant to 20 C.F.R. § 718.204(b)."
 
 
 9
 On remand, the case was referred to a new administrative law judge, Glenn Robert Lawrence, because Judge Cox had retired. The new ALJ noted that "the sole issue before [him was] whether, pursuant to Section 718.204(b), the Claimant's disability is due in whole or in part to pneumoconiosis." The ALJ also noted that "the Board specifically directed that all of the medical opinion evidence is to be re-evaluated pursuant to Section 718.204(b)."
 
 
 10
 The ALJ reviewed the medical evidence. He began by describing the opinion of Dr. A. Dahhan, who stated that, in his opinion, there was insufficient evidence of pneumoconiosis and that petitioner's chronic obstructive pulmonary disease and chronic bronchitis were encountered in patients with a smoking history. Dr. Dahhan stated that whereas pneumoconiosis typically causes a restrictive lung impairment, the "spirometry results on this patient showed an obstructive defect" consistent with cigarette smoking.
 
 
 11
 Dr. James Cooper examined x-rays on petitioner and also determined that petitioner did not suffer from pneumoconiosis. Cooper found that petitioner's decreased respiratory capacity was "due to obstructive disease, probably from cigarette smoking." The ALJ also reported that "Dr. Cooper further noted that the miner's spirometry improved somewhat after bronchodilators, and impairment due to pneumoconiosis is not affected by bronchodilators."
 
 
 12
 Dr. Bruce Broudy read petitioner's x-ray and also found an absence of pneumoconiosis. Dr. Broudy determined that petitioner's "spirometry produced a vital capacity measurement at 80% of normal, which ... rules out a restrictive impairment." Dr. Broudy noted that "pneumoconiosis causes usually a restrictive impairment, while cigarette smoking produces an obstructive impairment."
 
 
 13
 Dr. Frank Varney read petitioner's chest x-ray as indicating pneumoconiosis. After obtaining spirometry and blood gases, Dr. Varney found that petitioner "suffers from occupational pneumoconiosis with a restrictive type of ventilatory insufficiency and that he is totally disabled." The ALJ noted that Dr. Varney had acknowledged on cross examination that petitioner's smoking history could also account for his lung condition.
 
 
 14
 Dr. Bruce Guberman found "moderate combined obstructive and restrictive lung disease with a mild bronchopastic component."
 
 
 15
 Dr. William Anderson diagnosed pulmonary emphysema with moderate obstructive ventilatory defect. He noted that "[t]his type of emphysema is the result of cigarette smoking." Dr. Anderson diagnosed pneumoconiosis. But, since petitioner's lung capacity was 107 percent of normal, Dr. Anderson argued, "he could not possibly have a restrictive impairment."
 
 
 16
 Dr. Cordell Williams read petitioner's x-rays as positive for pneumoconiosis, which he attributed to petitioner's coal mining history. But, the ALJ noted, when asked on cross examination whether he was aware of petitioner's smoking history, Dr. Williams stated that this "would have no effect on pulmonary function, but this would have an effect on pulmonary disability."
 
 
 17
 Dr. J.W. Sutherland found petitioner's chest x-rays to be normal. His examination of a pulmonary function study revealed "moderate obstructive insufficiency, with improvement following bronchodilators." However, the ALJ noted, "Dr. J.W. Sutherland's opinion fails to address the critical issue of whether the pulmonary function impairment is caused in whole or in part by pneumoconiosis." Dr. Robert Penman reviewed the tracings of the pulmonary function studies obtained by Dr. Sutherland; he validated the tracings, and he determined that "the results show combined restrictive and obstructive lung disease."
 
 
 18
 Dr. R.V. Mettu examined petitioner and determined that his lungs were clear. He interpreted the pulmonary function study as indicating a moderate obstructive ventilatory defect.
 
 
 19
 Dr. J.P. Sutherland interpreted the x-rays as indicating category two pneumoconiosis, and he testified that petitioner is totally disabled from performing the work of a coal miner due to his pulmonary condition. Petitioner's x-rays "were consistent with 34 years of coal mining and were caused by that occupational exposure." But, the ALJ noted, Dr. Sutherland was unaware of the extent of petitioner's smoking habit and he had not obtained pulmonary function studies on the patient.
 
 
 20
 Dr. Gregory Fino found insufficient evidence to justify a diagnosis of pneumoconiosis. Dr. Fino believed that the abnormalities found on the pulmonary function studies were indicative of obstructive pulmonary disease.
 
 
 21
 Dr. George Kress found that on the basis of x-ray evidence there was insufficient evidence of pneumoconiosis. The ALJ noted that because this opinion was in conflict with findings made by the first ALJ and affirmed by the Board, the ALJ must take that into account when weighing Dr. Kress's findings. Dr. Kress determined that pulmonary function studies reveal an obstructive impairment, not a persistent restrictive impairment.
 
 
 22
 After laying out this considerable amount of medical evidence, the ALJ proceeded to analyze it to answer the fundamental question of causation. The ALJ began by noting that the Board had ruled that the prior ALJ was within his discretion when he accepted the opinion of Dr. J.P. Sutherland. However, the ALJ reduced the weight to give Dr. J.P. Sutherland's opinion because "it is surprising to find a treating physician unaware of his patient's smoking habit." The ALJ gave reduced weight to Dr. J.P. Sutherland's opinion because the doctor had not obtained a pulmonary function study, which, according to the ALJ, is a standard diagnostic aid.
 
 
 23
 The ALJ then noted that the Board had reversed the prior ALJ for not explaining why he had credited Dr. Williams's finding that petitioner's impairment was restrictive over the testimony of several other doctors who had found that the impairment was obstructive rather than restrictive. The ALJ determined that Dr. Williams had not in fact specifically characterized petitioner's impairment as restrictive or obstructive. According to the ALJ, "[a]t page 9 of his deposition, he merely referred to the pulmonary function studies as 'somewhat impaired' and the resulting respiratory disability as moderate." The ALJ placed even lower credence on Dr. Williams's opinion because of "his unexplained and seemingly contradictory assertion that smoking would have no effect on pulmonary function, but would have an effect on pulmonary disability."
 
 
 24
 The ALJ then discussed the findings of Dr. Varney, who also found that petitioner's disability was due in part to pneumoconiosis. The ALJ determined that less weight should be accorded to Dr. Varney's opinion because he was not board certified. The ALJ also determined that the weight to give Dr. Varney's testimony should be reduced because, on cross examination, Dr. Varney had admitted that smoking also could cause the conditions observed in petitioner.
 
 
 25
 The ALJ determined that "the most thorough explanation" of petitioner's condition was offered by Dr. William Anderson, who was board certified in pulmonary medicine. Dr. Anderson agreed that petitioner had pneumoconiosis, but he determined that the disease had not contributed to petitioner's pulmonary disability. The ALJ noted that Dr. Anderson was the only physician to obtain lung volume and diffusing capacity tests in addition to pulmonary function tests. On the basis of these tests, Dr. Anderson determined that petitioner's impairment was due to his cigarette smoking.
 
 
 26
 The ALJ then noted that Dr. Anderson's opinion was supported by the testimony of Drs. Dahhan, Broudy, Fino, and Kress, all of whom are board certified physicians. Accordingly, the ALJ determined that "the clear weight of the medical opinion [evidence] is that to the extent Claimant suffers from a pulmonary impairment, it is caused by cigarette smoke induced COPD rather than pneumoconiosis. Claimant has failed to sustain his burden of proof by a preponderance of the evidence upon that crucial issue."
 
 
 27
 When petitioner appealed to the Benefits Review Board, the Board affirmed the second ALJ's findings. The Board noted that the ALJ was within his discretion in according the most weight to Dr. Anderson's testimony, and that the ALJ did not err in relying on the superior qualifications of Dr. Anderson and those of other doctors--Dahhan, Broudy, Fino, and Kress--whose opinions supported Dr. Anderson's conclusions.
 
 II
 
 28
 On appeal, petitioner raises two issues: whether the Board erred when it reversed and remanded the first ALJ's determination that petitioner's disability was caused in part by pneumoconiosis, when that finding was supported by substantial evidence; and whether the Board erred in affirming the second ALJ's finding of no causation, when such findings were not in accordance with law and were not supported by substantial evidence.
 
 
 29
 * Petitioner's first argument is that the Benefits Review Board erred when it reversed and remanded ALJ Cox's findings on causation for further consideration of the medical evidence. Petitioner argues that since ALJ Cox's findings on causation were supported by substantial evidence the Board exceeded its scope of proper review by remanding the issue of causation.
 
 
 30
 The employer responds by arguing that petitioner is precluded from offering this argument because he did not present it to the Benefits Review Board. According to the employer, "[u]nder the doctrine of exhaustion of administrative remedies, it would be improper for this Court to consider this new issue."
 
 
 31
 Even if a claimant properly appeals some issues to the Board, a claimant may not obtain review of an ALJ's decision on any issues not properly raised first before the Board. Hix v. Director, OWCP, 824 F.2d 526, 527 (6th Cir.1987); see also Cox v. Benefits Review Bd., 791 F.2d 445, 447 (6th Cir.1986) (per curiam) (stating that "[i]t is generally recognized that under the doctrine of exhaustion of administrative remedies a court should not consider an argument which has not been raised in the agency proceeding which precedes the appeal."). Here, as petitioner neither appealed the Board's decision to remand nor raised this issue when he appealed ALJ Lawrence's findings to the Board, he may not raise it here.
 
 
 32
 Moreover, even if petitioner had raised the issue, the Board does not appear to have exceeded the scope of its review in remanding the case for further consideration of the medical evidence. When hearing an appeal from an ALJ's decision, the Board must "affirm, modify, vacate or reverse the decision or order appealed from, and may remand the case for action or proceedings consistent with the decision of the Board." 20 C.F.R. § 802.404. The Board's scope of review is defined as follows:
 
 
 33
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 34
 20 C.F.R. § 802.301(a).
 
 
 35
 Here the Benefits Review Board determined that ALJ Cox had improperly substituted his own opinions for those of several doctors when he wrote that the doctors had not adequately explained their reasons for rejecting petitioner's thirty-four year coal mining employment as a cause of his impairment; as the Board noted, the doctors had in fact considered petitioner's employment history as a cause but rejected that explanation in favor of his smoking history because petitioner's impairment was of an obstructive, not restrictive, nature. The Board found that ALJ Cox's opinion failed to comply with the Administrative Procedure Act when it did not provide reasons for accepting Dr. Williams's opinion that petitioner displayed a restrictive impairment over those of the other doctors, who found an obstructive, not a restrictive, impairment. See Director, OWCP v. Congleton, 743 F.2d 428, 430 (6th Cir.1984) ("[An] a.l.j.'s failure to explain his reason for crediting certain testimony while ignoring more substantial evidence would normally necessitate a remand with directions for more specific findings of fact."). Moreover, since these errors affected ALJ Cox's ultimate finding on the question of causation, the Board properly remanded the case for further consideration of the medical evidence on this issue. We do not find that these Board actions constituted an impermissible de novo review.
 
 B
 
 36
 Petitioner's second argument is that ALJ Lawrence's denial of benefits is contrary to law and unsupported by substantial evidence. Our scope of review of the Board's decision to affirm the ALJ is quite narrow. A decision of the Board must be affirmed if it did not commit a legal error or exceed its statutory scope of review of the ALJ's findings. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). The standards of review for the BRB and this court are the same. Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986) (per curiam). Thus, our review on appeal focuses on whether the ALJ had substantial evidence on which to base his decision. Zimmerman v. Director, OWCP, 871 F.2d 564, 566 (6th Cir.1989). If the ALJ's findings are supported by substantial evidence and are in accordance with the applicable law, the ALJ's findings are conclusive. Id.
 
 
 37
 We have thoroughly examined both the Board's review of the ALJ's findings and the findings themselves. The Board noted that the ALJ could permissibly attach the greatest weight to the opinion of Dr. Anderson, who found that petitioner's pulmonary disability was attributable to smoking, not his coal mining employment. The Board also noted that the ALJ could properly rely on those medical opinions he found most probative. There was substantial evidence on which to base its affirmance of the ALJ, who found that the weight of medical evidence indicated that petitioner's impairment was of an obstructive rather than restrictive nature. Since obstructive impairment is characteristic of smokers, the ALJ could reasonably find that petitioner had not proven by a preponderance of evidence that his total disability was due at least in part to pneumoconiosis under 20 C.F.R. § 718.204(b), and the Board did not err in affirming the decision of the ALJ.
 
 III
 
 38
 For these reasons, the decision of the Benefits Review Board is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation