Lewis **GIBAS,** Petitioner,

v.

**SAGINAW MINING COMPANY;** Director, **Office of Workers' Compensation Programs; and Benefits Review Board,** Respondents.

No. 83–3408.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1984.

Decided Nov. 26, 1984.

Daniel L. Manring (argued), Barkan & Neff Co., L.P.A., Columbus, Ohio, for petitioner.

Gerald P. Duff (argued), Kinder, Kinder & Hanlon, St. Clairsville, Ohio, Roscoe C. Bryant (LC), J. Michael O'Neill, Mary-Helen Mautner (argued), U.S. Dept. of Labor, Washington, D.C., for respondents.

Before MARTIN and KRUPANSKY, Circuit Judges, and McRAE, Chief Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The question presented is whether the Benefits Review Board, an administrative tribunal within the Department of Labor, is vested with the adjudicatory authority to declare invalid a regulation of the Secretary of Labor. Additionally, we are asked to determine whether, if the Board has such power, that power was properly exercised in this case.

---

* Honorable Robert M. McRae, Jr., Chief United States District Judge for the Western District of Tennessee, sitting by designation.

Lewis Gibas, a fifty-nine-year-old coal miner, petitions for review of a final decision by the Benefits Review Board, United States Department of Labor, denying him benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. The Board's decision reversed a determination by an administrative law judge who had awarded Gibas benefits for disability resulting from pneumoconiosis.[1] The Director, Office of Workers' Compensation Programs, of the Department of Labor supports Gibas' petition;[2] his employer, Saginaw Mining Company, opposes it. This court has jurisdiction under 33 U.S.C. § 921(c) (1976).

Gibas was born on November 8, 1924. He has an eighth-grade education. He worked as a coal miner with Saginaw for twenty-four years. He left Saginaw on June 24, 1978 due to a heart ailment. He has not worked since then.

On May 1, 1977, Gibas applied for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. The Department of Labor found him eligible for benefits and named Saginaw as the employer responsible for payment of the benefits. Saginaw challenged this decision, and an administrative hearing was held. After the hearing, the administrative law judge found Gibas disabled and entitled to benefits. The judge concluded that Gibas had successfully invoked the interim presumption of 20 C.F.R. § 727.203(a)(1984). Under that provision, an individual with ten years of coal mine employment "will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment" if: (1) x-rays establish the existence of pneumoconiosis, (2) ventilatory tests indicate the existence of a chronic respiratory or pulmonary disease, or (3) blood gas studies demonstrate the presence of a transfer of oxygen impairment. 20 C.F.R. § 727.203(a)(1)–(3) (1984). In particular, the judge found that Gibas had introduced sufficient x-ray evidence to satisfy the requirement of section 727.203(a)(1). The judge relied on the x-ray report of Dr. J.S. Gordonson, a B-Reader,[3] which revealed a positive test for pneumoconiosis. The judge concluded that Gibas' complaints of shortness of breath, first reported in 1965, and length of employment as a coal miner, when considered with Dr. Gordonson's x-ray reading, established a rebuttable presumption of disability due to pneumoconiosis.

The administrative law judge rejected Saginaw's contention that it had introduced sufficient medical evidence to rebut the presumption of disability pursuant to 20 C.F.R. § 727.203(b)(3)(1984). Under this provision, Saginaw was required to submit "evidence establish[ing] that the disability ... of the miner did not arise *in whole or in part* out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (1984) (emphasis added). In support of its assertion Saginaw argued that the report of Dr. George Kress, which opined that Gibas' disability was due to cardiovascular disease, and not pneumoconiosis, satisfied the rebuttal test of section 727.203(b)(3). The administrative law judge, however, disagreed. He noted:

It is recognized that the claimant has serious cardiovascular problems, that these problems led to his retirement in June 1978 and contribute to his present shortness of breath and that apparently his pneumoconiosis by itself, did not prevent him from working in June 1978 or earlier. However it is also true that the claimant has penumoconiosis, [sic] that penumoconiosis [sic] is a progressive and irreversible disease, that it could have

---

1. Pneumoconiosis is "a disease of the lungs caused by the habitual inhalation of irritant mineral or metalic particles." *Webster's New Collegiate Dictionary,* p. 878 (1981). *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 6–7, 96 S.Ct. 2882, 2888–89, 49 L.Ed.2d 752 (1976).

2. The Director is permitted to seek review of Board decisions in the courts to "ensure proper and consistent administration" of the Act. *Sha-*

*hady v. Atlas Tile & Marble Co.,* 673 F.2d 479, 483 (D.C. Cir.1982) (per curiam). *See also Director, OWCP v. Eastern Coal Corp.,* 561 F.2d 632, 641–49 (6th Cir.1977).

3. "B-readers" have the greatest expertise and training for evaluating x-rays. *See Hatfield v. Secretary of Health and Human Services,* 743 F.2d 1150, 1151, 1154 n. 3 (6th Cir.1984).

continued to progress in severity, in the claimant's case, after June 1978 and that Dr. Del Vecchio found evidence of small airway disease in January 1980.

In view of the facts that the claimant worked in coal mines about 24 to 29 years under dusty conditions, that his May 1979 x-ray shows simple pneumoconiosis and that he is clearly disabled by conditions including shortness of breath, I believe that it would be unduly speculative to attribute all of his disability to his cardiovascular impairment and none of it to his pneumoconiosis, and I decline to do so. I conclude that the evidence fails to show that the claimant's present disability, during the period since May 1979, does not arise at least in part from his pneumoconiosis, or that he would now be able to do his previous coal mine work as far as any pulmonary or respiratory impairment is concerned. (No showing has been made as to the availability of comparable and gainful work.)

In view of the foregoing, it is concluded that the employer has not rebutted the interim presumption of totally disabling pneumoconiosis and that the claimant is entitled to benefits.

Saginaw then appealed to the benefits Review Board, which reversed. The Board, although upholding the administrative law judge's finding that Gibas had successfully invoked the interim presumption of section 727.203(a)(1), nonetheless reversed because the judge had applied section 727.203(b)(3) as written, rather than as rewritten by the Board in its decision in *Jones v. The New River Company*, 3 Black Lung Rep. 1–199 (1981).[4] In *Jones,* the Board found that the "in whole or in part" language of section 727.203(b)(3) was inconsistent with 30

U.S.C. § 901(a) and 902(f)(1) (Supp. V 1981). The Board held section 727.203(b)(3) invalid "insofar as it permits awards for disability caused only in part by diseases arising out of coal mine employment." *Jones,* 3 Black Lung Rep. at 1–208. In the Board's view, section 727.203(b)(3), as written by the Secretary, permits awarding benefits "to claimants who are only *partially* disabled due to pneumoconiosis" when it requires that the employer "show that *no part* of the total disability arose out of coal mine employment." *Id.* at 1–208–209. Because the Black Lung Benefits Act provides benefits only to those who are "totally disabled due to pneumoconiosis," 30 U.S.C. § 901, the Board felt that any regulation that allowed for disability resulting in part from pneumoconiosis was not in accordance with the law. Consequently, the Board ruled that the words "in whole or in part" should be stricken from the regulation. Under the Board's revised provision, a presumption of disability would be rebutted under section 727.203(b)(3) "if it is shown that total disability ... did not arise out of coal mine employment." *Jones,* at 1–209.

Applying the *Jones* ruling to Gibas' claim, the Board concluded that the administrative law judge had erred when he measured Saginaw's rebuttal evidence under the regulation as written by the Secretary. The Board then noted that the judge had erred in rejecting Dr. Kress' opinion that Gibas' disability was totally due to heart disease. The Board found that Dr. Kress' report was based upon sufficient documentation and uncontradicted by other medical evidence. Thus the Board held that "the interim presumption [was] rebutted pursuant to 20 C.F.R. § 727.203(b)(3) as a *matter of law.*" (emphasis added).[5]

---

**4.** Because the Board ruled that the administrative law judge had erred in his interpretation of section 727.203(b)(3), it did not reach Saginaw's other contentions that it had also rebutted the presumption pursuant to 727.203(b)(2) and (b)(4). Saginaw has not reasserted these contentions here.

**5.** As we read the Board's decision, the administrative law judge erred because he failed to apply section 727.203(b)(3) as rewritten by the

Board in *Jones v. The New River Company, supra.* We therefore disagree with Saginaw's contention that the Board issued an additional, alternative ruling that the presumption was rebutted even under 727.203(b)(3) as written by the Secretary, notwithstanding the *Jones* ruling. In other words, without the Board's revision of section 727.203(b)(3), the administrative law judge properly found Gibas entitled to benefits and Saginaw has failed to rebut the presumption of disability.

Both the Director and Gibas contend that the Board lacked the statutory or constitutional authority to invalidate the Secretary's regulation. Alternatively, they contend the Board has misinterpreted section 727.203(b)(3). Gibas also asserts that Saginaw has not satisfied its burden of refuting the interim presumption claimed under 727.203(a)(1). Saginaw, on the other hand, argues that the Board did not act beyond its authority when it declared section 727.-203(b)(3) invalid; it further argues that there is not substantial evidence in the record to support the administrative law judge's determination that Gibas is disabled due to pneumoconiosis.

Congress adopted the Black Lung Benefits Act in response to the significant number of coal miners who were disabled due to pneumoconiosis as a result of extended employment in the nation's underground coal mines. The purpose behind the enactment of the Act was to "provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901. Under the Act, the Secretary of Labor was given the authority to establish regulations and guidelines for determining whether a coal miner's pneumoconiosis "arose out of employment in a particular underground coal mine or mines." 30 U.S.C. § 932(h).

In 1972 Congress amended the Longshoremen's and Harbor Workers' Compensation Act of 1927, as amended, 33 U.S.C. § 901 et seq., to provide a new administrative process for benefits requests under several federal workers' compensation programs. See S.Rep.No. 1125, 92d Cong., 2d Sess. 13–15. The Black Lung Benefits Act was one of the compensation programs affected by the amendments. See Director, OWCP v. National Mines Corp., 554 F.2d 1267, 1272–73 (4th Cir.1977). Before the 1972 amendments, deputy commissioners adjudicated requests for benefits. The decision of the deputy commissioners were then reviewable by the district courts, with further review available in the courts of appeals. The 1972 amendments altered this procedure and vested the formal adjudication of benefits requests in administrative law judges, 33 U.S.C. § 919(d), who resolve the initial factual and legal issues presented in each case.

 The 1972 amendments also established a three-person Benefits Review Board to review the determinations of the administrative law judges. 33 U.S.C. § 921(b)(3). Under the new procedures, the Board was placed "within the Department of Labor," S.Rep.No. 1125, supra, at 13–14 (emphasis added), to provide an internal administrative body for the review of benefits requests. As described by the Secretary's own regulations, "the functions of the ... Board are quasi-judicial in nature and involve review of decisions made in the administration" of the Act. 20 C.F.R. § 801.103 (1984). Congress expressly granted the Board the authority to hear and decide appeals raising a substantial question of law or fact. 33 U.S.C. § 921(b)(3). However, the Board may not engage in a de novo review of an administrative law judge's determination. New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1037 (5th Cir.1981). Also, an administrative law judge's findings of fact and conclusions of law may only be set aside by the Board if not supported by substantial evidence, or not in accordance with the law. 20 C.F.R. § 802.301 (1984); Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983). Thus the Board "performs a review function identical to that which the District Courts performed prior to the 1972 amendments." Kalaris v. Donovan, 697 F.2d 376, 382 (D.C.Cir.), cert. denied, — U.S. ——, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983). Rulings of the Board are appealable to the courts of appeals. Our review is limited to "scrutiniz[ing] Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Director, OWCP v. Rowe, 710 F.2d at 254 (quoting Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980)).

■ The Director and Gibas assert that the Board lacks the authority to declare the Secretary's regulations invalid. They argue that because the Board is not an Article III court, *see Kalaris v. Donovan,* 697 F.2d at 386, and its members are appointed at the Secretary's discretion, *id.* at 401, it lacks the authority to declare a regulation invalid. They contend the Board was established only to administer Department of Labor policy. Under this view, the Board is seen as one of two "arms" of the Secretary—the other being the Director—that were created to administer and implement the Secretary's policies under the Act. Permitting the Board to invalidate the Secretary's regulations, they argue, would create administrative obstacles to effective implementation of the Act and undermine the Secretary's policymaking authority.

■ Although the Supreme Court has not directly spoken on the authority of the Benefits Review Board to declare one of the Secretary's regulations invalid,[6] several other courts have suggested that administrative bodies like the Board do not have the authority to adjudicate the validity of legislation which they are charged with administering. *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, 936 (2d Cir.1976); *Finnerty v. Cowen,* 508 F.2d 979, 982 (2d Cir.1974); *Downen v. Warner,* 481 F.2d 642, 643 (9th Cir.1973). The appropriate analysis for determining this issue is set out in *Panitz v. District of Columbia,* 112 F.2d 39 (D.C.Cir.1940). There Judge (later Justice) Vinson ruled that a court should first ask whether the agency has the inherent power to rule on the objections to the legislation. Next, a court should ascertain if the act, or regulations adopted pursuant thereto, purport to vest the agency with the authority to rule on challenges to the legislation. *Panitz,* 112 F.2d at 41–42. Applying the *Panitz* test here, we find first that the Benefits Review Board does not have the inherent authority to rule on the validity of the Secretary's regulations be-

cause it is not an Article III court. *See Kalaris v. Donovan,* 697 F.2d at 384–89. Under our constitutional system, "[t]he judicial power of the United States [is] exercised by courts having the attributes prescribed in Article III of the Constitution." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982). Those attributes are:

The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

Art. III, § 1. Here, it is undisputed that Board members do not enjoy the benefits of life tenure and the guarantee against salary diminution. Moreover, other "essential attributes of the judicial power" were not vested in the Board, including the power of subpoena, the power to hold an individual for contempt and the power to have its orders enforced. 33 U.S.C. §§ 927, 921(d).

Additionally, courts have refused "to recognize in administrative officers any inherent power to nullify legislative [or executive] enactments because of personal belief that they contravene the [C]onstitution." *Panitz,* 112 F.2d at 42 (footnote and citations omitted). Rather, administrative agencies are vested only with the authority given to them by Congress. *Cf. Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976) (rulemaking authority of an administrative agency in charge of administrating federal statute is not the power to make law); *Social Security Board v. Nierotko,* 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946) (an administrative agency may not finally decide the limits of its statutory power; this is a judicial function).

We do conclude, however, that Congress has vested the Board with the statutory power to decide substantive questions of

---

**6.** We do not consider the dicta in *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980), that the Board is not a policymaking agency to be dispositive on the issue presented here.

law, *see* 33 U.S.C. § 921(b)(3), and we therefore find that the Board did not act beyond its authority in ruling on the validity of 20 C.F.R. § 727.203(b)(3).

Our determination is supported by the clear statutory language of 33 U.S.C. § 921(b)(3), which expressly authorizes the Board "to hear and determine appeals raising a substantial *question of law* or fact." (emphasis added). The Secretary has advanced no reason why this positive grant of authority should be narrowly construed to preclude the Board from ruling on the validity of the challenged regulation. The power to decide "substantial question[s] of law," in our view, clearly implies the power to determine whether a regulation is in accord with the Act.

It is equally clear that the Board was established to fulfill the review function previously performed by the district courts. *Nacirema Operating Co., Inc. v. Benefits Review Board,* 538 F.2d 73, 75 (3d Cir. 1976); Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum.L.Rev. 13, 36–37 (1975). Surely Congress anticipated that the Board would be called upon to decide substantive legal issues in its role as an appellate tribunal under the Act. Without this additional layer of appellate review, the courts of appeals would be confronted with cases which had not undergone the "screening procedure" previously provided by the district courts.

Concededly, the Board, like the district courts under the earlier law, is granted limited authority in its review of administrative determinations. 33 U.S.C. § 921(b)(3). "It is not empowered to engage in a *de novo* review but rather is limited to reviewing the [administrative law judge's] decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record viewed as a whole."[7] *Director, OWCP v. Rowe,* 710 F.2d at 254. Nonetheless, the composition and operating procedures of the Board are akin to a judicial forum. Board members are appointed by the Secretary "from among individuals who are especially qualified to serve" on the Board. 20 C.F.R. § 801.201 (1984). Board members are precluded from considering matters where a possible conflict of interest may be present. Further, after their tenure on the Board, former members may not become involved with any matter which had been considered by them in their official capacity. 20 C.F.R. § 801.203 (1984). Additionally, in hearings before the Board the parties are entitled to be represented by an attorney, submit written argument, request oral argument and receive a written opinion explaining the Board's decision. 20 C.F.R. §§ 802.202, 802.306 and 802.403 (1984). Thus the Board cannot be described as a tribunal "wholly unsuitable" for the adjudication of substantive legal claims. *Oestereich v. Selective Service System,* 393 U.S. 233, 242, 89 S.Ct. 414, 419, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring). In sum, the Board performs the identical appellate function previously performed by the district courts. Therefore, it appears that Congress intended to vest in the Board the same judicial power to rule on substantive legal questions as was possessed by the district courts. *See Carozza v. United States Steel Corp.,* 727 F.2d 74 (3d Cir. 1984).

Other courts, in different legal contexts, have also recognized the Board's power to decide substantive legal claims. Courts have recognized the Board's power to determine whether a claimant for federal benefits was a decedent's "wife" under state domestic relations law, *Ryan-Walsh Stevedoring Co., Inc. v. Trainer,* 601 F.2d 1306, 1315–16 (5th Cir.1979); whether weekly death benefits payable under the Longshoremen's and Harbor Workers' Compensation Act are subject to the limitations imposed by section 6(b)(1) of that Act, *Director, OWCP v. O'Keefe,* 545 F.2d 337 (3d Cir.1976); and whether an adminis-

---

7. The Board will not adjudicate claims not raised before the administrative law judge. *Moore v. Paycor, Inc.,* 11 B.R.B.S. 483, 492–93 (1979). Nor does the Board consider new evidence or reweigh the evidence presented below. 20 C.F.R. § 802.301 (1984).

trative law judge may award travel expenses to successful claimants, *Potomac Iron Works v. Love,* 673 F.2d 537 (D.C.Cir.1982) (per curiam). Conversely, the courts of appeals have refused to decide substantive legal questions not presented to the Board in the first instance. *Blevins v. Director, OWCP,* 683 F.2d 139, 142–43 (6th Cir.1982); *General Dynamics Corp. v. Sacchetti,* 681 F.2d 37, 40 (1st Cir.1982). Of course, the courts of appeals retain the plenary authority to review the Board's legal conclusions, *Carozza,* 727 F.2d at 77; *Kalaris,* 697 F.2d at 399; nevertheless, it is apparent that the Board's appellate review provides a screening device for frivolous claims and sharpens the focus of debate if further review is sought in the court of appeals.

Finally, it has been clear since *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), that Congress can require that the adjudication of congressionally created rights take place in non-Article III tribunals, provided that Article III courts retain the essential attributes of judicial power. *Carozza,* 727 F.2d at 77; *Kalaris,* 697 F.2d at 388. As articulated by the plurality opinion in *Northern Pipeline Co. v. Marathon Pipeline Corp.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), "when Congress creates a statutory right, it clearly has the discretion, in defining that right, to ... provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right." *Northern Pipeline Co.,* 458 U.S. at 83, 102 S.Ct. at 2878 (footnote omitted). Here, Gibas' claim against Saginaw involves "the liability of one individual to another under the law as defined," *Northern Pipeline Co.,* 458 U.S. at 69–79, 102 S.Ct. at 2870–75 (quoting *Crowell v. Benson,* 285 U.S. at 51, 52 S.Ct. at 292), and thus concerns the adjudication of "private rights." However, Gibas' right to request benefits was created by Congress.

Therefore Congress possessed "substantial discretion to prescribe the manner in which that right may be adjudicated—including the assignment to an [administrative tribunal] of some functions historically performed by judges." *Northern Pipeline Co.,* 458 U.S. at 80, 102 S.Ct. at 2876 (footnote omitted). In our view, this discretion included the authority to give the Benefits Review Board the power to declare invalid a regulation that is not consistent with the Black Lung Benefits Act.

The holding in *Kalaris* does not undermine our conclusion. There the District of Columbia Circuit ruled that the Board is not an Article III court and that the Secretary could remove Board members at his discretion because Congress did not intend to make the Board independent of the Secretary. *Kalaris,* 697 F.2d at 389, 401. These rulings are not dispositive of the issue presented here. First, the Board's non-Article III status does not affect its authority to adjudicate disputes concerning federally created rights. As noted, Congress has substantial discretion to prescribe the manner in which such rights are initially determined. *Northern Pipeline Co.,* 458 U.S. at 83, 102 S.Ct. at 2877. Second, Congress' refusal to grant the Board independence from the Secretary is not, in our view, pertinent to whether the Board exceeded its authority in finding that 20 C.F.R. § 727.203(b)(3) is not in accordance with the Black Lung Benefits Act. The decision in *Kalaris* that the Board is not independent of the Secretary was based upon Congress' silence on the issue and the general rule that "the power of removal presumptively is incident to the power of appointment." *Kalaris,* 697 F.2d at 389. *Kalaris* simply did not concern the scope of the Board's adjudicatory authority under the Act.[8]

Although we find that the Board possessed sufficient adjudicatory authority

---

**8.** Nor did the rulings in *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, 936 (2d Cir.1976), *Finnerty v. Cowen,* 508 F.2d 979, 982 (2d Cir. 1974), and *Downen v. Warner,* 481 F.2d 642, 643 (9th Cir.1973), address the issue before us.

These cases concerned whether exhaustion of administrative relief was necessary before seeking judicial review of constitutional claims in Article III courts.

to declare 20 C.F.R. § 727.203(b)(3) invalid, our inquiry is not over. The Board's construction of section 727.203(b)(3) is subject to plenary review here. *Crowell v. Benson*, 285 U.S. at 49–50, 52 S.Ct. at 291–92; *Carozza*, 727 F.2d at 77; *Kalaris*, 697 F.2d at 387. In *Jones v. The New River Co.*, *supra*, the Board ruled that the "in whole or in part" language of section 727.-203(b)(3) was not consistent with the purposes of 30 U.S.C. § 901(a) and 902(f)(1). This determination was error. The Black Lung Benefits Act requires payment of benefits only for total disability due to pneumoconiosis. 30 U.S.C. § 901 and 902(f)(1), 20 C.F.R. § 727.201 (1984). The Board reasoned that section 727.203(b)(3) permitted the award of benefits for less than total disability. However, section 727.203(b)(3) has nothing to do with the degree of a miner's disability. On the contrary, it concerns the burden placed upon an employer in order to rebut the interim presumption of section 727.203(a). Specifically, section 727.203(b)(3) provides an employer the opportunity to rebut the presumption that a miner is "totally disabled" by "establish[ing] that the *total disability* did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.-203(b)(3) (emphasis added). As explained by Judge Miller in his dissent in *Van Nest v. Consolidation Coal Co.*, 3 Black Lung Rep. at 1–538 (1981),

> [W]hen viewed in proper context, "arises in whole or in part" can only mean *arises in whole* or *arises in part.* It is simply without support to infer, as do my colleagues, that "in part" applies to disability rather than causation.... The "in part" language plainly refers to, and modifies, causation (arising out of coal mine employment), not the extent of disability.

Thus, section 727.203(b)(3) does not permit the award of benefits for partial disability; it merely grants an employer the chance to prove that a miner's disability did not arise, in whole or in part, from his coal mine employment. If an employer is able to prove that pneumoconiosis played no part in causing a miner's disability, then the employer has satisfied the requirements of section 727.203(b)(3). Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits. *American Coal Co. v. Benefits Review Board*, 738 F.2d 387, 391 (10th Cir.1984); *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir.1984); *Alabama By-Products v. Killingsworth*, 733 F.2d 1511, 1516 n. 10 (11th Cir.1984); *Carozza*, 727 F.2d at 78. This principle is consistent with the Act's goal of providing benefits to those miners "who are totally disabled due to pneumoconiosis arising out of [coal mine] employment." 30 U.S.C. § 901(a).

The record before us reveals that the administrative law judge considered all of Saginaw's evidence. He expressly acknowledged Gibas' "serious cardio-vascular problems" and Dr. Kress' opinion that Gibas' disability was not caused by pneumoconiosis. Nonetheless, the judge also found persuasive evidence that Gibas has pneumoconiosis, is disabled from shortness of breath and has been employed as a coal miner for twenty-four to twenty-nine years under dusty conditions. In light of those facts the judge found that Gibas has satisfied the interim presumption of section 727.203(a), and Saginaw had failed to rebut that presumption. We find no error in these conclusions. Saginaw had the burden of proving that Gibas was not totally disabled. *Bethlehem Mines Corp.*, 736 F.2d at 124; *Alabama By-Products*, 733 F.2d at 1514–15; *Consolidation Coal Co. v. Smith*, 699 F.2d 446, 449 (8th Cir.1983); *Hampton v. U.S. Dept. of Labor Benefits Review Board*, 678 F.2d 506, 508 (4th Cir. 1982); *McCluskey v. Zeigler Coal Co.*, 2 Black Lung Rep. 1–1248, 1272–73 (1981). The administrative law judge concluded that this burden was not met. A review of the record reveals substantial evidence to support this conclusion. Therefore, the decision of the judge was free of factual or legal error.

The judgment of the Board is reversed; the petition for review is granted, and the

case is remanded to the Board with instructions that benefits be awarded.