886 F.2d 1317
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ZEIGLER COAL COMPANY, and Old Republic Insurance Companies,
Petitioners,
v.
Charles JONES, and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 88-4178.
 United States Court of Appeals, Sixth Circuit.
 Oct. 6, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioners Zeigler Coal Company and Old Republic Insurance Companies petition for review of a decision of the Benefits Review Board awarding black lung disability benefits to respondent-claimant Charles Jones pursuant to the Black Lung Benefits Act, 30 U.S.C. Secs. 901-45. For the reasons that follow, we deny the petition to review and affirm the award of benefits.
 
 I.
 
 2
 Jones was a coal miner in Kentucky from 1946 until 1978. He filed his claim for benefits on November 26, 1979, and because his last employment was with Zeigler, it was deemed the responsible operator. On October 3, 1983, at Zeigler's request, the claim was forwarded to the Department of Labor's Office of Administrative Law Judges for a hearing. On July 7, 1986, an ALJ issued a Decision and Order finding that Jones was not disabled as a result of pneumoconiosis and denied his claim.
 
 
 3
 The ALJ concluded that Jones invoked the interim presumption of pneumoconiosis pursuant to 20 C.F.R. Sec. 727.203(a)(2), based on his ventilatory studies. The ALJ also found Jones did not invoke the presumption under any other subsection.
 
 
 4
 As the ALJ found Jones had invoked the presumption of pneumoconiosis, he then considered whether the presumption was rebutted under 20 C.F.R. Sec. 727.203(b). That section provides that the employer may rebut the interim presumption by establishing that: (1) the claimant is in fact doing his usual coal mine work or comparable gainful work; (2) the claimant is able to do his usual coal mine work or comparable gainful work; (3) the claimant's total disability did not arise out of his coal mine employment; or (4) the claimant does not have pneumoconiosis. The ALJ concluded that Zeigler had rebutted the presumption under 20 C.F.R. Sec. 727.203(b)(3) as Jones' disability did not arise out of his coal mine employment.
 
 The ALJ stated:
 
 5
 The record shows that the Claimant suffers from a disabling condition; however, the weight of the evidence also indicates that his impairment has resulted from conditions that did not arise from coal mine employment. Dr. O'Neill testified that the Claimant's impairment was caused by heart disease, hypertension and obesity, none of which were caused by coal mine employment. Dr. Anderson believed that the Claimant's condition was caused by heart disease, and was not related to his coal mine employment. Drs. Getty and Gallo did not believe that the Claimant's lung impairment was disabling. The Claimant is also suffering from a hearing loss and the amputation of two fingers. The record also reveals that the Claimant ceased working in the coal mines because he was laid off, not because of shortness of breath, and he worked at two other jobs afterwards. Therefore, despite the opinions of Drs. Calhoun and Simpao to the contrary, I find that the Employer has submitted sufficient evidence to rebut the interim presumption under Section 727.203(b)(3).
 
 
 6
 (emphasis added; footnote omitted).
 
 
 7
 Jones appealed to the Board. On July 25, 1988, the Board issued a Decision and Order reversing the ALJ's conclusion and remanded the case for an award of benefits. The Board held that the evidence presented was insufficient to establish that Jones' presumed total disability was not, in whole or in part, caused by coal mine employment. Relying on Warman v. Pittsburgh & Midway Coal Mining Co., 839 F.2d 257 (6th Cir.1988), the Board noted that "neither Dr. O'Neill, Dr. Getty, Dr. Gallo nor Dr. Anderson stated that pneumoconiosis played no part in causing claimant's disability...."
 
 
 8
 Zeigler moved for reconsideration, arguing that the Board misconstrued Warman. Zeigler asserted that rebuttal under section 727.203(b)(3) is permitted where the most persuasive evidence established that pneumoconiosis was not a contributing factor, in whole or in part, to the condition that disabled the miner.
 
 
 9
 On October 28, 1988, the Board denied Zeigler's motion and rejected Zeigler's characterization of its earlier decision as adopting "a per se/magic word rule." The Board noted that in reversing the ALJ, it applied settled law to the effect that rebuttal under section 727.203(b)(3) is appropriate only where the medical opinions support a finding that the claimant's total disability did not arise in whole or in part out of coal mine employment. The Board went on to state that the evidence relied upon by the ALJ in the present case was insufficient to establish that Jones' total disability was not at least partially causally related to his coal mine employment. Zeigler timely petitioned this court for review of the Board's order.
 
 II.
 
 10
 The ALJ's findings of fact are to be "conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3). The Board must defer to the ALJ's findings of fact and conclusions of law which may be set aside "only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law." 20 C.F.R. Sec. 802.301(a). We have held that "the Board must affirm the administrative law judge if his or her decision is supported by substantial evidence and is not irrational." Campbell v. Consolidation Coal Co., 811 F.2d 302, 303 (6th Cir.1987) (emphasis in original).
 
 
 11
 Recently, we considered our role in reviewing a Board decision overturning an ALJ's ruling. Zimmerman v. Director, Office of Workers' Compensation Programs, 871 F.2d 564 (6th Cir.1989). In Zimmerman, we noted that under the Black Lung Benefits Act, the ALJ has the express power to make conclusive findings of fact, and the Board's function is limited to determining whether the ALJ's findings "are supported by substantial evidence." Id. at 567. We held that under the Black Lung Benefits Act, "we are to defer to the ALJ, not to the Board." Id.
 
 III.
 A.
 
 12
 The key finding of the ALJ is the conclusion that "the weight of the evidence ... indicates that [Jones'] impairment has resulted from conditions that did not arise from coal mine employment." In its first opinion, the Board seemed to indicate that the ALJ erred by failing to find that Jones' presumed total disability was in no part caused by pneumoconiosis.
 
 
 13
 However, in its opinion on Zeigler's motion for reconsideration, the Board made clear that it was aware that the ALJ found that pneumoconiosis played no part in causing Jones' disability. The Board, however, found that this factual conclusion was not supported by the evidence. The Board indicated that it reversed the ALJ "[b]ecause the medical opinions relied on by the [ALJ] are ... insufficient to support a finding that claimant's total disability did not arise in whole or in part out of coal mine employment, and not, ... because the physicians failed to use the precise words 'played no part'...."
 
 
 14
 In Gibas v. Saginaw Mining Co., 748 F.2d 1112 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985), we discussed the proper interpretation of 20 C.F.R. Sec. 727.203(b)(3).[1] We held that subsection (b)(3) "does not permit the award of benefits for partial disability; it merely grants an employer the chance to prove that a miner's disability did not arise, in whole or in part, from his coal mine employment." Id. at 1120. We noted that the subsection "has nothing to do with the degree of a miner's disability." Id. However, "[i]f an employer is able to prove that pneumoconiosis played no part in causing a miner's disability, then the employer has satisfied the requirements of section 727.203(b)(3)." Id. Thus, the employer does not rebut the presumption of disability under subsection (b)(3) "[w]here ... pneumoconiosis is a contributing cause to a miner's total disability...." Id. (emphasis added). Rather, an employer rebuts the presumption only by showing pneumoconiosis was not a contributing cause to the miner's presumed total disability. See Warman v. Pittsburgh & Midway Coal Mining Co., 839 F.2d 257, 259 (6th Cir.1988); Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986) (per curiam).
 
 
 15
 In this case, the ALJ found that pneumoconiosis was not a contributing cause to Jones' total disability. Instead, the ALJ noted that the medical evidence established that the disability resulted totally from Jones' heart disease, hypertension, and obesity, and that none of these conditions were caused by Jones' coal mine employment. Thus, the issue before us is whether the ALJ's conclusion is supported by substantial evidence.
 
 B.
 
 16
 In concluding that pneumoconiosis played no part in causing Jones' disability, the ALJ relied on the reports of Drs. O'Neill, Getty, Gallo, and Anderson. A review of these doctors' opinions, however, discloses that the Board was correct in concluding that the doctors' opinions do not support a finding that pneumoconiosis was not a contributing cause of Jones' presumed total disability.
 
 
 17
 Dr. Richard O'Neill examined Jones and was later deposed. He stated that Jones suffered from mild small airway obstructive disease, simple pneumoconiosis, arteriosclerotic cardiovascular disease, hypertension, obesity, amputation to the fourth and fifth fingers of the right hand, and decreased hearing in the right ear due to trauma. Dr. O'Neill opined that the symptoms in Jones' history were of a nonspecific nature and could be consistent with many diseases. Dr. O'Neill felt that the probable etiology of Jones' complaint of progressive exertional dyspnea, occasional productive cough, and inability to walk up more than two flights of stairs as being arteriosclerotic cardiovascular disease, significant hypertension, and obesity. Yet O'Neill did not indicate that pneumoconiosis did not contribute to Jones' disability. He testified on deposition as follows:
 
 
 18
 D30: And so your diagnosis was that Mr. Jones has simple pneumoconiosis?
 
 
 19
 A. That's correct, sir.
 
 
 20
 .............................................................
 
 
 21
 ...................
 
 
 22
 * * *
 
 
 23
 D33: Were Mr. Jones' subjective complaints consistent with the diagnosis of pneumoconiosis?
 
 
 24
 A. They were, sir.
 
 
 25
 And were his subjective symptoms and your objective findings consistent with that diagnosis?
 
 
 26
 A. They were, Sir.
 
 
 27
 .............................................................
 
 
 28
 ...................
 
 
 29
 * * *
 
 
 30
 D39: Dr. O'Neill, having examined Mr. Jones and having made your diagnosis, would you pass him on a pre-employment physical for work in and around the coal mine?
 
 
 31
 .............................................................
 
 
 32
 ...................
 
 
 33
 * * *
 
 
 34
 A. I would not, sir.
 
 
 35
 .............................................................
 
 
 36
 ...................
 
 
 37
 * * *
 
 
 38
 D40: Dr. O'Neill, in your opinion, based on reasonable medical probability, would the pulmonary impairment Mr. Jones has due to the pneumoconiosis you diagnosed impair his ability to do heavy work outside of the mines?
 
 
 39
 A. In addition to coal workers' pneumoconiosis, Mr. Jones has mild small airways obstructive disease which, in my opinion, would give him some problem carrying out heavy sustained manual labor over an eight-hour period.
 
 
 40
 Thus, Dr. O'Neill's deposition, if anything, indicates that pneumoconiosis was a contributing cause, albeit only slightly, to Jones' disability.
 
 
 41
 Dr. Getty's report might be viewed as supporting the ALJ, but, in fact, Dr. Getty does not address the critical issue of whether pneumoconiosis was a contributing factor of Jones' presumed total disability. Dr. Getty examined Jones on July 31, 1981, and concluded that Jones suffered from chronic bronchitis with a chronic obstructive pulmonary disease and hypertensive vascular disease. He found Jones' obstruction to be minimal and concluded that Jones "could continue to work in the mines insofar as the pulmonary system is concerned...." Dr. Getty did, however, note that Jones' pulmonary ventilatory studies indicated "very minimal obstructive pulmonary disease." We note, however, that Dr. Getty never makes the conclusion the ALJ does; viz., that pneumoconiosis played no part in Jones' disability.
 
 
 42
 The remaining two doctors, Dr. Gallo and Dr. Anderson, also do not provide substantial evidence for the ALJ's conclusion. Dr. Gallo examined Jones on January 2, 1975, and concluded that he "may have chronic obstructive pulmonary disease." He did not, however, believe that Jones suffered from coal workers' pneumoconiosis. He stated that his pulmonary function studies disclosed mild impairments exhibiting some pulmonary dysfunction. However, Dr. Gallo did not believe that Jones' lung impairment was disabling.
 
 
 43
 Dr. Anderson likewise concluded that Jones did not suffer a disabling pulmonary impairment. Dr. Anderson, however, did find that Jones suffered from category 1 pneumoconiosis and elevation of diastolic blood pressure. After a second evaluation, Dr. Anderson again found category 1 occupational pneumoconiosis and symptoms of arteriosclerotic heart disease. On deposition, he testified:
 
 
 44
 Q. Dr. Anderson, based upon the data from your studies and the studies that you reviewed today and the one I have given you by hypothetical, in your opinion does Mr. Jones have a permanent pulmonary impairment?
 
 
 45
 A. Yes. It would appear that he does have a mild decrease in his ventilatory ability.
 
 
 46
 Q. How would you classify the type of impairment that he has?
 
 
 47
 A. Well, I have the advantage of knowing what his total lung capacity was, and know that it was decreased. So this means that he has a mild restrictive ventilatory defect.
 
 
 48
 Q. What in your opinion is the cause of the mild restrictive defect in this case?
 
 
 49
 A. I believe this is due to his cardiovascular disease.
 
 
 50
 Dr. Anderson noted, however, that X-ray evidence disclosed Jones suffered from category 1 pneumoconiosis. Dr. Anderson also indicated that as Jones suffered from pneumoconiosis, it would not be desirable for him to be exposed to higher concentrations of coal dust. However, Dr. Anderson did not state that pneumoconiosis was not a contributing factor to plaintiff's pulmonary problem.
 
 
 51
 We believe that the medical evidence in this case is very similar to, and indeed involves some of the same individuals as, that presented in Warman v. Pittsburgh & Midway Coal Mining Co., 839 F.2d 257 (6th Cir.1988). There, both Drs. Gallo and Anderson also testified against the claimant, Warman, indicating that Warman did not suffer from a totally disabling pulmonary impairment. Dr. Anderson indicated that Warman suffered no impairment or functional disability due to pneumoconiosis. Also, Dr. Gallo attributed Warman's pulmonary diseases, not to his employment in the coal industry, but to bronchitis and emphysema.
 
 
 52
 In Warman, Dr. Gallo's testimony was to the effect that the claimant did not have a pulmonary disease primarily caused by his employment in the coal industry. We held that this evidence was insufficient to rebut the presumption of total pneumoconiosis disability under subsection (b)(3). Id. at 261. We noted that the key inquiry under this subsection, as explained in Gibas, is whether substantial evidence exists that the claimant's disability did not arise in whole or in part out of coal mine employment. Id. at 260. The medical evidence in Warman was basically to the effect that the claimant did not suffer a total disability at all, or if he did, that it was attributable mainly to other factors. However, in Warman, there was no medical conclusion that pneumoconiosis was not, at a minimum, a contributing factor to the claimant's disability, assuming such existed. Thus, in Warman we rejected the ALJ's reliance upon Dr. Anderson's and Dr. Gallo's conclusions that the claimant was either not disabled, or disabled based primarily upon other factors.
 
 
 53
 Similarly in this case, there is no substantial evidence that Jones' presumptive disability is not in whole or in part attributable to pneumoconiosis. Again, the focus of the inquiry must be on whether or not any reliable medical evidence has been presented that pneumoconiosis played no part in Jones' total disability. Although Drs. O'Neill, Getty, Gallo, and Anderson all sound skeptical of Jones' assertion of coal mine related total disability, none of these doctors provides substantial evidence for the ALJ's conclusion that rebuttal under subsection (b)(3) has been established. Moreover, two of them, Dr. Anderson and Dr. O'Neill, specifically conclude Jones does have pneumoconiosis.
 
 C.
 
 54
 Zeigler also argues that even if the Board was correct in finding the ALJ's decision was not supported by substantial evidence, it nonetheless should have remanded the case to give Zeigler an opportunity to present new evidence or to present the existing evidence under the Board's standard. Zeigler's arguments are premised on its assertion that the Board has adopted a "new rule," and it should be permitted to shape its evidence accordingly. However, Zeigler's premise is incorrect, as no "new rule" has been applied in this case. Rather, this case is determined by Warman and Gibas, and the former, which revisited the standard established in the latter in 1984, did not establish a new rule of law.
 
 
 55
 Zeigler's reliance upon Wright v. Island Creek Coal Co., 824 F.2d 505 (6th Cir.1987), Moseley v. Peabody Coal Co., 769 F.2d 357 (6th Cir.1985), and Ramey v. Kentland Elkhorn Coal Co., 755 F.2d 485 (6th Cir.1985), is misplaced. In Wright, the employer rebutted the presumption of section 727.203 by showing, pursuant to Gibas, that the miner's total disability was caused by his heart disease and that it was not due, in whole or in part, to his coal mine employment. Wright, 824 F.2d at 508. In Moseley, none of the doctors found any evidence of pneumoconiosis, and in Ramey the pulmonary function studies did not indicate that the miner suffered a respiratory impairment which could be related to coal mine work. In this case, six of Jones' nine pulmonary function studies indicate respiratory impairment which could be related to coal mine work, and two doctors have specifically concluded that Jones has pneumoconiosis. Furthermore, as earlier stated, although all four doctors relied upon by the petitioners sound skeptical of Jones' assertion that he has coal mine related disability, none of these doctors provide substantial evidence for the ALJ's conclusion that rebuttal under subsection (b)(3) has been established.
 
 IV.
 
 56
 Once the presumption is invoked pursuant to 20 C.F.R. Sec. 727.203(a)(2), rebuttal under 20 C.F.R. Sec. 727.203(b)(3) can be established only by proving that pneumoconiosis played no part or was not a contributing factor to the claimant's disability. The burden of proof as to rebuttal is on the petitioners, and they have failed in their burden of proof in this case. Accordingly, for the foregoing reasons, the petition for review is DENIED, and the Board's decision to award Jones benefits is AFFIRMED.
 
 
 
 [1]
 20 C.F.R. Sec. 727.203(b)(3) provides that "the presumption ... shall be rebutted if: (3) [t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment...."