28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NEWCON COALS, INC., Petitioner,
v.
Billy CAUDILL; Director of Workers' Compensation Programs,
United States Department of Labor, Respondents.
 No. 93-3773.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1994.
 
 Before: JONES, Circuit Judge; WELLFORD, Senior Circuit Judge; and ENSLEN*, District Judge.
 PER CURIAM.
 
 
 1
 A coal miner, Billy Caudill ("Caudill"), respondent herein, first filed for black lung benefits in September of 1973. Unfortunately, the case has been slowly and painstakingly working its way up (and down) the administrative maze ever since. Caudill, who is not literate, or barely so, apparently received help in filing his claim. Caudill claimed to be unemployed at 37 years of age. He followed, literally, the instructions to "describe briefly your disability" and responded: "Coughs a lot."[1] He apparently filed no supporting documentation about why he coughed frequently and indicated no treating doctor or hospital's name, despite the instruction in the claim form, "list all medical information relating to any respiratory or pulmonary disease alleged to have resulted from coal mine employment." He listed the name of no prior mine employer nor when any respiratory illness prevented him from performing coal mine employment. Caudill indicated he worked in the coal mines for "15-20 years." Almost eleven months later, a claims examiner for the Department of Labor sent a letter to Caudill, referring to an earlier letter dated March 18, 1974, which apparently had asked for "additional medical evidence necessary to support your claim." The July, 1974 letter advised Caudill that since such evidence had not been submitted, "[Y]our entitlement to black lung benefits must therefore be informally denied until such time as medical evidence supporting your claim has been submitted." The letter also advised Caudill of his right to a formal hearing.
 
 
 2
 Within a week, the following letter was received by the Department of Labor:
 
 Dear Sirs:
 
 3
 What I waited[2] to do was put in my claim for Black Lung Benefit and then freeze it until a later date. I will get the rest of my papers and send them to you.
 
 
 4
 Thanks ever so much.
 
 Mr. Billy Caudill
 Box 61
 
 5
 Bulan, Ky.
 
 
 6
 There is nothing in the record reflecting further action in respect to Caudill's claim. He could not "freeze" his claimant status without submitting medical information, but he was free to resubmit a new claim with medical support at any time. The Director now takes the position that Caudill's initial claim was denied on July 29, 1974. The employer, Newcon Coals, Inc. ("Newcon"), points out in its brief that the 1973 initial claim was filed "during a short break in his employment" and "[h]e then returned to employment in 1974." Under the circumstances, we treat the claim as effectually denied after a reasonable time beyond the date of the July 29, 1974 letter. Caudill never submitted any medical proof for at least six years, far beyond any period that might be considered a reasonable time. We treat the initial claim as having been denied or that Caudill waived or abandoned any rights to pursue that claim after 1975 by reason of his inaction after notification from the Department of Labor.[3]
 
 
 7
 Congress amended the Black Lung Benefits Act, effective March 1, 1978, to provide for reopening claims previously denied. The amendments established more liberal criteria for awarding benefits. Accordingly, on April 6, 1979, the Department of Labor notified Caudill that it would reconsider his claim. Caudill was still working at the time, apparently, and Newcon, his employer, was notified of this prior, and now reconsidered, claim in October of 1979. Caudill was found eligible for benefits under the new standards in January, 1980, and the matter was then submitted to an administrative law judge ("ALJ").
 
 
 8
 The Act was, once again, amended and new Sec. 205 provided for liability for benefits to be transferred to the Black Lung Disability Trust Fund (the "Fund") for a claim "denied before March 1, 1978, and which is or has been approved in accordance with the provisions of section 945."[4] The Director, however, then took the position, mistakenly we conclude, as representative of the Fund, that Caudill's claim had not been "denied" before March 1, 1978, under 30 U.S.C. Sec. 902(i).
 
 
 9
 The status of Caudill's claim is uncertain from 1975 through 1977. 20 C.F.R. Sec. 725.423(c)(1) provides that a case may be declared abandoned if there has been "no final resolution of a case after 90 days" from filing with the deputy commissioner pursuant to Sec. 725.140 and there has been no prior request for a formal hearing. In deeming the claim to have been denied, we avoid the issue of termination in case of abandonment under 20 C.F.R. Sec. 725.425.
 
 
 10
 In Slone v. Wolf Creek Collieries, 10 BLR 1-66, 1-70 (1987), appeal dismissed sub nom. Canada Coal Co. v. Stiltner, 866 F.2d 153 (6th Cir.1989), the Benefits Review Board held that "the need for judicial finality requires that claimants continue to pursue their claims, or, if appropriate, that the claims be unconditionally withdrawn or dismissed." The Board in Slone cited 20 C.F.R. Sec. 725.306, Sec. 725.465 and Sec. 725.466 in support of that proposition. We deem the claim in the instant case to have been denied under all the circumstances. This is equivalent to dismissal by the Department of Labor. We believe that, even if Caudill's claim was not deemed to have been denied by the Department of Labor, it still is appropriate to consider that Caudill, by his long inaction, waived his claim or that it be treated as "withdrawn or dismissed." We consider that the effect is the same--whether denied, waived, abandoned, withdrawn or dismissed. Caudill's claim was terminated before March 1, 1978.
 
 
 11
 In any event, the Department of Labor did not notify Newcon of the existence of Caudill's claim until October, 1979. At that time, the claim was more than six years old. Newcon promptly controverted any liability on its part. The case was referred to an ALJ (Dapper) in August of 1981, before the effective date of the amendment aforementioned. The ALJ determined that the 1981 Act was applicable with its amendment which "transferred liability from the identified responsible operator to the ... (Trust Fund) in cases in which the claim was denied (See 205(b) of the 1981 Act) before March 1, 1978." Among other things, the ALJ decided that the required notification of denial was sent to claimant in July, 1974, and that the claimant did not present additional evidence within the one-year period. The ALJ held further that Caudill's response, received August 5, 1974, was not a request for a hearing, and indicated that the claimant did not intend to pursue his claim. The ALJ then concluded that Newcon was entitled to dismissal.
 
 
 12
 Two years later, in 1985, the Director appealed the Fund's liability in BRB No. 83-2751 BLA, OWCP No. zsb-gs-dngq We find the Board to have erred in reversing the ALJ's factual finding as to Caudill's intent in his August, 1974 letter, based on the circumstances and the record presented to the ALJ.[5] There was substantial evidence to support the ALJ's factual findings in this regard. To the extent the ALJ's interpretation of Caudill's writing was a legal question, we again find the Board to have erred in concluding that "the only reasonable interpretation of claimant's letter is that it indicates an intention to present additional evidence." (emphasis added). The ALJ's interpretation was at least as reasonable in finding that "the sentence in question, as well as the entire letter, is too vague and ambiguous to warrant ... a conclusion [of an intention to present additional evidence]." We note that the ALJ's conclusion is buttressed by the fact that Caudill did not present any additional evidence over the next five years. The ALJ's decision was not "irrational" as described by the Board, and we, therefore, hold, for the reasons indicated, that Newcon is not liable for Caudill's claim, if it has merit.
 
 
 13
 On remand from the Board for consideration of the merits of Caudill's claim, ALJ Dapper found that Caudill secured coal mine employment during 1977, 1978 and 1979, further indicating that during this time Caudill was not "intending" to pursue, nor was he pursuing any black lung claim. This time, following the erroneous directions of the Board in BRB No. 83-2751 BLA, the ALJ, on remand in 1985, the ALJ found the employer liable and Newcon appealed. The Board, in January, 1988 (over a two year delay), considered the latter's argument that there was a failure to consider all the relevant evidence. This time the Board agreed with Newcon that relevant evidence had indeed been ignored and, again, remanded for consideration of Caudill's entitlement on the merits. The Board, however, also ruled that "[a]n employer may not establish rebuttal" under Part 727 of the Act and under 20 C.F.R. Sec. 727.203(b)(2) citing York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987).[6]
 
 
 14
 The parties litigated this, by then, old case for the third time on remand before a new ALJ (Bober), who rendered his decision in April of 1989. The ALJ affirmed the prior decision awarding benefits against the employer. The ALJ noted, however, that Pittston Coal Group v. Seblen, 109 S.Ct. 414 (1988), held that Part 727 interim presumption violated Sec. 902(f) of the Black Lung Benefits Act.
 
 
 15
 Another appeal ensued to the Board, which unfortunately and regrettably, did not rule until May, 1993. BRB No. 89-1521 BLA. The Board affirmed, considering that there were two of three contemporaneous medical opinions on x-rays of Caudill indicating pneumoconiosis. Newcon appealed to this court. Nothing was filed by Caudill, but the Director responded by brief and by argument. Counsel for respondent advised that entitlement date for benefits was July, 1980, if Caudill is deemed eligible as so determined, after remand, by the ALJ and the Board. We review Board decisions to determine first whether the Board applied the proper standard for review. Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983). We review legal conclusions of the Board de novo. Brown Badgett, Inc. v. Jennings, 842 F.2d 899, 901 (6th Cir.1988).
 
 
 16
 The respondent's brief sets out two issues before us: (1) whether Caudill is entitled to benefits; and, if he is, (2) who is responsible for paying those benefits. We have held that Newcon is not responsible under the circumstances of this case.[7] We are left to consider whether Caudill is entitled to benefits after July, 1980, and, if so, whether the Fund should pay those benefits. We agree with the respondent that Caudill's is a "transition" claim as described in Old Ben Coal Co. v. Luker, 826 F.2d 688, 693 (7th Cir.1987).
 
 
 17
 With respect to Caudill's entitlement to benefits, the respondent submitted by brief and argument that "ALJ Dapper's findings of no rebuttal under 20 C.F.R. Sec. 727.203(b)(3) should be vacated and the case remanded for reconsideration" because all the relevant rebuttal evidence was not considered. See Warman v. Pittsburgh and Midway Coal Min. Co., 839 F.2d 257 (6th Cir.1988); Wright v. Island Creek Coal Co., 824 F.2d 505 (6th Cir.1987); Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485 (6th Cir.1985); Gibas v. Saginaw Mining Co., 748 F.2d 1112 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 18
 We must agree with the respondent in this last position. According to 20 C.F.R. Sec. 727.203(a):
 
 
 19
 In adjudicating a claim under this subpart, all relevant medical evidence shall be considered.
 
 
 20
 (emphasis added). 20 C.F.R. Sec. 727.203(b) states that:
 
 
 21
 The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 22
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work; or
 
 
 23
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work; or
 
 
 24
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 25
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 26
 ALJ Dapper did not consider all of the relevant medical evidence because he chose to discount improperly the relevant medical testimony of Dr. Powell regarding the cause of Caudill's disability. The issue before our court is whether the responsible party, pursuant to Sec. 727.203(b)(3), established that Caudill's total disability was due to something other than his coal mine employment. The other three options were either previously adjudicated or waived and are not before this court. The issue of whether a claimant's disability is due to coal mine employment is an important one. As this court stated in Gibas:
 
 
 27
 The Black Lung Benefits Act requires payment of benefits only for total disability due to pneumoconiosis. 30 U.S.C. Sec. 901 and 902(f)(1), 20 C.F.R. Sec. 727.201 (1984).... Specifically, section 727.203(b)(3) provides an employer the opportunity to rebut the presumption that a miner is "totally disabled" by "establish[ing] that the total disability did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3) (emphasis added).... If an employer is able to prove that pneumoconiosis played no part in causing a miner's disability, then the employer has satisfied the requirements of section 727.203(b)(3). Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits. American Coal Co. v. Benefits Review Board, 738 F.2d 387, 391 (10th Cir.1984); Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir.1984); Alabama By-Products v. Killingsworth, 733 F.2d 1511, 1516 n. 10 (11th Cir.1984); Carozza, 727 F.2d at 78. This principle is consistent with the Act's goal of providing benefits to those miners "who are totally disabled due to pneumoconiosis arising out of [coal mine] employment." 30 U.S.C. Sec. 901(a).
 
 
 28
 Gibas, 748 F.2d at 1120. It was reversible error for ALJ Dapper to fail to consider the testimony of Dr. Powell because it related directly to the issue of the source of Caudill's disability. We regret the further delay involved in still another remand. It is also regrettable that during these prior hearings many years ago, the government counsel did not point to the above authority to avoid this delay and expense involved.
 
 
 29
 We REVERSE the holding that Newcon is liable. We REMAND, in accordance with the respondent's urging, for the ALJ to consider fully and fairly all relevant rebuttal evidence regarding the cause of Caudill's disability. Benefits, if any, will be borne by the Fund.
 
 
 30
 (2) in which (A) the claimant was notified by the Department of Labor of an administrative or informal denial more than 1 year prior to the date of enactment of the Black Lung Benefits Reform Act of 1977 [enacted March 1, 1978] and did not, within 1 year from the date of notification of such denial, request a hearing, present additional evidence or indicate an intention to present additional evidence....
 
 
 
 *
 THE HONORABLE RICHARD A. ENSLEN, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 He also responded to a prior question to the effect that no one had ever told him he had pneumoconiosis (black lung disorder)
 
 
 [2]
 The other factfinders interpreted this word as "wanted." We have attached a copy of the letter. Regardless of whether the word in question is "wanted" or "waited," it has no determinative effect on the outcome of this case
 
 
 [3]
 20 C.F.R. Sec. 725.425 (1974) discusses "abandonment" of a claim. Subsection (b)(2) states that may be the situation "[i]n cases where the claimant fails in a significant way to pursue his claim with reasonable diligence." Caudill failed to pursue his 1973 claim reasonably, diligently, or in a timely manner. Subsection (d) states, in part: "[U]pon the expiration of 1 year from the date on which a claim is deemed abandoned pursuant to this section, such claim may not once again be pursued." Neither the Department, nor an ALJ, however, formally declared the claim to be abandoned
 
 
 [4]
 Congress defined a "claim denied" in the 1981 Amendments by adding a new subsection (i) to Section 402, in part:
 (i) For the purposes of subsections (c) and (j) of section 932 ... the term "claim denied" means a claim--
 * * *
 
 
 [5]
 The Board authority on review is limited; if the ALJ's findings and conclusions are supported by substantial evidence, are not irrational, and are consistent with pertinent law, they are binding upon the Board. O'Keeffe v. Smith, Hinchman & Grylls Assoc., 380 U.S. 359, 362 (1965); Richardson v. Perales, 402 U.S. 389, 390 (1971)
 
 
 [6]
 The Board also refused to reconsider its original decision in 7 BLR 1-852 (1985) holding Newcon responsible
 
 
 [7]
 The respondent is incorrect in stating in his brief that Caudill's letter of August, 1974, "states two separate intentions ... to 'freeze' [his claim] and that he would submit the 'rest of his papers.' " He expressed no clear intent certainly as to when he would do anything. The Department of Labor was not required, as it now argues, "to suspend or continue any proceedings." It was not incumbent upon the Department of Labor to wait indefinitely for claimant to do something to support a claim already informally denied. "Caudill's counsel did agree that Caudill received a denial of his claim after August 5, 1974."