NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0484n.06
Filed: June 9, 2005

Case No. 02-3528

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WOLF CREEK COLLIERIES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **BENEFITS REVIEW BOARD,** |
| | ) | **UNITED STATES DEPARTMENT** |
| RUBY SAMMONS (WIDOW OF RICHARD | ) | **OF LABOR** |
| SAMMONS) and DIRECTOR, OFFICE OF | ) | |
| WORKERS' COMPENSATION PROGRAMS, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and SUTTON, Circuit Judges; and BELL, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.** Employer Wolf Creek Collieries ("Wolf Creek") appeals from the U.S. Department of Labor ("Department") Benefits Review Board's ("Board") order affirming Administrative Law Judge (ALJ) Robert Hillyard's order awarding Black Lung benefits to Ruby Sammons, the widow of Richard Sammons ("miner"). Because the ALJ's decision is consistent with applicable law and supported by substantial evidence, we affirm.

## I.

This appeal arises after a protracted series of appeals to and remands from the Benefits

_____

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

Review Board over a span of nearly 30 years. The facts relevant to this appeal are as follows: On March 11, 1976, Richard Sammons was working as a federal mine inspector when he was killed in an explosion and mine collapse. His body was never recovered. On April 14, 1976, Ruby Sammons filed a survivor's claim for Black Lung benefits pursuant to 30 U.S.C. §§ 901 *et seq.* In 1984, the Department of Labor Claims Examiner issued a revised finding declaring Wolf Creek to be the responsible operator under 20 C.F.R. § 725.493.

On November 21, 1988, ALJ Gray, relying on a 1975 x-ray interpreted as positive for pneumoconiosis by a B-reader, found sufficient evidence to support invocation of the interim presumption of total disability pursuant to 20 C.F.R. § 727.203(a)(1). The ALJ nonetheless denied benefits because he found the presumption rebutted under 20 C.F.R. § 727.203(b)(1). On appeal, the Board vacated the finding of rebuttal under § 727.203(b)(1), declared rebuttal under § 727.203(b)(2) & (b)(4) to be unavailable as a matter of law, and remanded the case for consideration under § 727.203(b)(3).

This remand was followed by still more appeals and remands concerning § 727.203(b)(3) rebuttal. Of note to the instant appeal, in 1998, the Board found that none of the medical opinions in the record was sufficient to establish rebuttal under § 727.203(b)(3), and therefore the Board remanded the case to ALJ Hillyard to determine whether it was necessary to reopen the record to provide Wolf Creek the opportunity to present new § 727.203(b)(3) evidence. On October 20, 1999, the ALJ reopened the record for a period of 60 days for the parties to submit additional evidence relevant to § 727.203(b)(3). Following the expiration of the 60 days, the ALJ denied Wolf Creek's request to keep the record open for an additional 60 days to allow the employer to obtain a copy of the 1975 x-ray. The ALJ subsequently refused to consider or admit into evidence the medical

evidence submitted by Wolf Creek after the 60-day window had closed, and found that Wolf Creek had failed to establish § 727.203(b)(3) rebuttal. The Board affirmed, and denied reconsideration. This appeal followed.

## II.

In cases arising under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901 *et seq.*, this court and the Board examine the ALJ's decision to determine whether it is consistent with applicable law and supported by substantial evidence. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1116 (6th Cir. 1984). Furthermore, "[w]hen the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, 'our scope of review . . . is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence.'" *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230-31 (6th Cir. 1994) (quoting *Riley v. National Mines Corp.*, 852 F.2d 197, 198 (6th Cir.1988)).

## A.

Wolf Creek first asserts that reversal is required because it has established rebuttal as a matter of law under 20 C.F.R. § 727.203(b)(2), which provides that the presumption of total disability arising from, *inter alia*, a positive x-ray under 20 C.F.R. § 727.203(a)(1) "shall be rebutted if . . . [i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work . . . ." Wolf Creek vehemently argues that at the moment of his death, the miner was working in the mine as a mine inspector, work that is comparable to his prior work as a mine foreman, and the fact of this employment proves that he was not disabled. Although at first blush, logic and common sense might require that we adopt this view, the regulations do not permit it. In the case of a miner working in a coal mine at the time of his death,

20 C.F.R. § 727.205(a) provides that:

> A deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled . . . . [A]ll relevant evidence, including the circumstances of such employment and the statements of the miner's spouse, shall be considered in determining whether the miner was totally disabled due to pneumoconiosis at the time of death.

On closer examination of the regulatory scheme and this circuit's case law on this point, *see, e.g., Farmer v. Rogers*, 839 F.2d 269 (6th Cir. 1988) (holding that a deceased miner's employment in a coal mine at the time of his death is not conclusive evidence that he was not totally disabled, and that the widow is not required to prove a change in circumstances), we think it apparent that the intent of this regulation is to recognize the fact that some miners continue to work in the mines even when they are no longer able to do so. And in this case, Sammons's widow testified that Sammons, although continuing to work as a mine inspector, was able to be in the mine for only short periods, was suffering breathing difficulties, and because of these problems, he "was fixing to retire." Hence, the fact that he was working in the mine at the time of his death is not conclusive evidence that he was not totally disabled.

Wolf Creek argues with equal vehemence that we must reverse the Board's order affirming the granting of benefits because the medical evidence establishes § 727.203(b)(2) rebuttal of the presumption of total disability. In 1990, the Board examined the medical evidence provided by Wolf Creek, and determined that because that evidence predated by more than two years the positive x-ray establishing the presumption of disability due to pneumoconiosis, it was insufficient as a matter of law to establish § 727.203(b)(2) rebuttal under this court's decision in *Cooley v. Island Creek Coal Co.*, 845 F.2d 622 (6th Cir. 1988). In *Cooley*, we said:

> The claimant argues that it is not rational to conclude that a finding of pneumoconiosis, a progressive disease, which was first established by an X-ray in

4

November 1980 may be rebutted by medical evidence consisting of two one-time examinations conducted a year or more prior to that X-ray. The presumptions contained in the Black Lung Act would be of little value if they could be rebutted by evidence consisting of medical opinions reached as a result of examinations of a claimant conducted at a time before the claimant had established the conditions required to trigger the presumptions.

*Cooley*, 845 F.2d at 623-24. Wolf Creek objects to the Board's § 727.203(b)(2) determination in part because the ALJ had not yet ruled on this claim. But in making this determination, the Board was not performing the ALJ's fact-finding function; rather, the Board determined as a matter of law, based upon this court's ruling in *Cooley*, that it would have been irrational for an ALJ to hold the available evidence—all of which predated the proof of injury by a period of more than two years—relevant for the purposes of § 727.203(b)(2) rebuttal. Because the Board's determination is not inconsistent with our holding in *Cooley*, we must affirm.

Finally, Wolf Creek complains that it should have been permitted to provide additional evidence to bolster its § 727.203(b)(2) claim. However, we can find no evidence in the record that Wolf Creek ever requested that the record be reopened for the admission of additional evidence regarding § 727.203(b)(2). To the contrary, it is clear from the record that the request to provide additional medical evidence, and the Board's order on remand that the ALJ reopen the record to permit Wolf Creek to provide that evidence, related to Wolf Creek's attempt to establish § 727.203(b)(3) rebuttal. Accordingly, Wolf Creek's claims regarding § 727.203(b)(2) must fail.

**B.**

Wolf Creek next argues that rebuttal is appropriate under § 727.203(b)(3), which provides that the § 727.203(a)(1) presumption of total disability "shall be rebutted if . . . [t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment[.]"

5

After reopening the record for the purpose of admitting new § 727.203(b)(3) evidence, the ALJ reviewed the sole piece of new evidence submitted in a timely fashion by Wolf Creek—the report of Dr. Branscomb. The ALJ noted that Dr. Branscomb disputed the positive finding of pneumoconiosis, and emphasized Branscomb's conclusion that "I can conclude with a high level of medical certainty or probability that neither pneumoconiosis nor the effect of coal mine dust nor pulmonary impairment of any etiology played any role whatsoever to produce *any significant disability* in Mr. Sammons." (emphasis added by ALJ). Dr. Branscomb also said that "I see no indication that the previous decision of total disability incorporated an awareness of the excellent objectively proved pulmonary function studies and the medical histories including one signed by Mr. Sammons indicating the absence of any pulmonary disease or symptom whatever." The ALJ correctly looked to this court's decisions in *Gibas* and *Warman v. Pittsburg & Midway Coal Mining Co.*, 839 F.2d 257 (6th Cir. 1988), for the principle that to succeed in establishing § 727.203(b)(3) rebuttal, an employer must demonstrate that there is no causal relationship between the presumed disability and the coal mine employment, and not that the miner was not in fact disabled. This standard is not met by disputing the presence or degree of disability. Indeed, in *Warman*, this court found that medical testimony stating that the miner did not suffer from any functional pulmonary disability did not meet the § 727.203(b)(3) standard. *Id.* at 260. Here, the ALJ correctly found that Dr. Branscomb's testimony went to the degree or presence of disability, and therefore did not establish § 727.203(b)(3) rebuttal.

Wolf Creek next claims that the ALJ erred in failing to admit interpretations of the 1975 x-ray submitted after the reopened record deadline had expired. Wolf Creek claims that 30 U.S.C. § 923(b) requires the consideration of "all relevant evidence," that this evidence was relevant, and

6

therefore, the ALJ's failure to admit the untimely evidence was error. We disagree. Dr. Stallard's interpretation of the 1975 x-ray was formally placed into evidence at a hearing before the ALJ on June 15, 1988. Because this x-ray formed the basis for the § 727.203(a)(1) presumption, Wolf Creek must have been aware of its importance. The employer had more than enough time to request the x-rays for expert evaluation in this extended litigation, but did not do so until the last possible opportunity. While it appears that counsel diligently pursued the x-ray once the record was reopened, we decline to construe counsel's extended delay in seeking this evidence as the ALJ's error, or to construe 30 U.S.C. § 923(b) to require unending discovery.

We are fully aware of Wolf Creek's unmistakable threat to continue to resist the granting of these benefits to Sammons's widow, using this claim of "new evidence": "Either the new evidence relevant to invocation should have been considered by the administrative law judge on remand or it will have to be addressed during future modification proceedings." Appellant's Brief at p. 30. Statutory modification proceedings, Wolf Creek argues—citing this circuit's opinion in *King v. Jericol Mining, Inc.*, 246 F.3d 822, 825 (6th Cir. 2001)—require the consideration of "newly submitted evidence." While Wolf Creek is certainly free to continue this Thirty Years War, we would point out that in *Jericol Mining*, we did not mention "newly submitted evidence." Rather, quoting the Supreme Court's statement in *O'Keeffe v. Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 256 (1971), we said, "The plain import of [the modification statute] was to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by *wholly new evidence*, cumulative evidence, or merely further reflection on the evidence initially submitted." *Jericol Mining*, 246 F.3d at 825 (emphasis added). Evidence that could—and in our view should—have been obtained more than ten years earlier is not "new evidence," let alone "wholly

7

new evidence," and, as we have heretofore indicated, the factual determinations of the ALJ and the Board are not erroneous, but are supported by substantial evidence in the record. Hence, neither a review of the cumulative evidence nor further reflection on the evidence initially submitted demonstrates a factual error that may be corrected by future modification proceedings. And nothing in *Jericol Mining* lends support to Wolf Creek's apparent belief that the ALJ was required to keep this record open for as long as it took for Wolf Creek to obtain the information that it belatedly sought.

## C.

Finally, Wolf Creek argues that because Ruby Sammons elected to receive widow's benefits under the Federal Employees' Compensation Act ("FECA") based upon her husband's death in the cave-in while performing the duties of a federal mine inspector, she is precluded from also receiving Black Lung benefits. Under the election-of-remedies doctrine, if "an individual having two coexistent but inconsistent remedies chooses to exercise one, . . . he loses the right to thereafter exercise the other." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 464 (6th Cir. 1999) (internal citation and quotation omitted). This judicial estoppel doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (1974).

There is no legal or factual inconsistency in the instant case. Mrs. Sammons is to receive widow's benefits under the BLBA because her husband is presumed to have been permanently disabled due to pneumoconiosis based upon the 1975 x-ray. Because she filed the claim prior to January 1, 1982, the statutory scheme does not require that the disability constitute the cause of death in order to receive benefits. 20 C.F.R. § 725.212(a)(3)(ii). Mrs. Sammons is also entitled to

8

receive benefits under FECA because her husband died while performing the function of a federal mine inspector.  Put simply, Ms. Sammons's separate claims do not involve the same injury:  her FECA claim is for accidental death, while her BLBA claim is for occupational injury.

Because Mrs. Sammons's claims are not legally or factually inconsistent, Wolf Creek's election-of-remedies argument must also fail.

### III.

For the foregoing reasons, we **AFFIRM** the order of the Benefits Review Board.

9